# IN THE COURT OF APPEALS OF IOWA

No. 14-1123
Filed September 17, 2014

**IN THE INTEREST OF T.O., M.O., and A.C.,**
**Minor Children,**

**S.C., Mother,**
    Appellant,

**J.O., Father,**
    Appellant.

_____

Appeal from the Iowa District Court for Scott County, Cheryl Traum, District Associate Judge.

A mother appeals from the order terminating their parental rights. **AFFIRMED.**

Brenda Drew Peeples, Davenport, for appellant mother.

Lucy Valainis, Davenport, for appellant father, J.O.

Jean Capdevila, Davenport, for father.

Thomas J. Miller, Attorney General, Kathrine Miller-Todd, Assistant Attorney General, Michael Walton, County Attorney, and Julie Walton, Assistant County Attorney, for appellee State.

Jack Dusthimer, Davenport, for minor children.

Considered by Danilson, C.J., and Vogel and Bower, JJ.

**DANILSON, C.J.**

The mother appeals from the district court order terminating her parental rights to her three children, T.O., M.O., and A.C.[1]  We acknowledge that the mother has made progress on her mental health and the safety and cleanliness of the home.  However, the children could not be returned to her care at the time of the termination hearing and several of the circumstances that led to adjudicating the children in need of assistance (CINA) still exist.  The mother requested additional time for reunification at the termination hearing, but "our legislature has carefully constructed a time frame to provide a balance between the parent's efforts and the child's long-term best interests."  *In re D.W.*, 791 N.W.2d 703, 706 (Iowa 2010).  Her past decisions and the time the children have endured in limbo support affirming the district court's order terminating the mother's parental rights.

**I. Background and Proceedings.**

T.O. was born in June 2009; M.O. was born in July 2011.  The Iowa Department of Human Services (DHS) became involved with the family in July 2012 due to reports there was a paintball gun accessible to the children and the parents were using marijuana in the presence of the children.  When the caseworker made initial contact with the family, she observed that the home was unkempt, including finding dog feces on the floor of the home.  Although it was

---

[1] Three fathers had their parental rights terminated.  Two did not appeal.  One filed a separate, timely notice of appeal on July 7, 2014.  However, the father failed to file a petition on appeal within fifteen days, pursuant to Iowa Rule of Appellate Procedure 6.201(2).  As a result, our supreme court issued an order on August 15, 2014, dismissing the father's appeal.

later determined there was not an accessible paintball gun, the parents refused to submit to drug testing and refused to allow their children to be tested for drugs.

On August 17, 2012, the DHS obtained a court order to check conditions of the home and perform a welfare check on T.O. and M.O. The caseworker found the conditions of the upstairs of the home were unsanitary and unsafe. M.O. was observed in a broken crib with dog feces nearby. DHS then enacted a safety plan that required the children to live outside the home until the home was "cleaned, sanitized, and determined safe for her children."

The State filed a petition on September 14, 2012, alleging T.O. and M.O. were CINA pursuant to Iowa Code section 232.2(6)(b), (c)(2), (e), (g), and (n) (2011). In support of the petition, DHS stated:

> It is concerning the conditions of the home the children were living in. The home had many safety hazards for young children such as broken doors and basement access, which is unclean and unsafe. There were new and old dog feces in the home. It did not appear as if anyone attempted to clean it up. The kitchen was filthy, with dirty dishes and trash all about the kitchen. The freezer was observed to have no food. Also, the refrigerator had very little food. [The mother] and [her] paramour were given ample opportunity to address the identified issues within the home.
> . . . .
> [The mother] has been dishonest about her addressing her mental health and is not currently taking any medications to address her diagnosis of Bi-polar Disorder.

Upon these grounds, M.O. and T.O. were adjudicated CINA on December 7, 2012, pursuant to Iowa Code sections 232.2(c)(2), (e), (g), and (n).

On January 14, 2013, DHS filed an application for temporary removal after learning the mother had exposed the children to M.O.'s putative father after it was found he had perpetrated sexual abuse against other children in an unrelated case. The mother denied the children had been in contact with the

father but insisted that he would never harm her children and that he was not a risk. The mother also engaged in a physical altercation with her brother in front of the children.

On January 14, 2013, the juvenile court found it was contrary to the children's welfare to remain at home because "the children [had] been exposed to a perpetrator of sexual abuse" and domestic violence. T.O. and M.O. were placed in the temporary care and custody of DHS the same day.

DHS filed an application for temporary removal at the time of A.C.'s birth. The juvenile court filed a removal order on June 17, 2013, stating:

> It is contrary to the welfare of the child to remain in her parent's custody at this time. [A.C.] was born [in] June . . . 2013. She is vulnerable in that she needs constant care and supervision, and is unable to fend for herself. Her half siblings . . . have been placed in foster care since January 2013. The mother . . . suffers from untreated mental illness. Prior to the siblings being removed there was physical abuse present in the home. [The mother] has a relationship with a sex offender . . . . Although she reports that relationship is over, he reportedly visited her at the hospital after [A.C.] was born.

A.C. was adjudicated a CINA on August 14, 2013, pursuant to Iowa Code section 232.2(6)(b), (c)(2), (g), and (n) (2013).

The juvenile court held an uncontested permanency hearing regarding T.O. and M.O. on September 03, 2013. In the permanency order, filed September 12, 2013, the court stated:

> The parents have minimally complied with the requirements of this case plan. The mother completed a psychiatric evaluation; however, she still struggles with visitation, inappropriate statements while at visits, and conditions of her house.
> . . . .
> Based on the progress being made by the parents, the Court anticipates that the children may be returned to parental custody and control within six months. Specifically, the mother has

completed her psychological evaluation and is more open to medication and therapy.

On January 9, 2014, the juvenile court held a combined hearing on permanency regarding A.C. and a permanency review hearing regarding T.O. and M.O. The hearing exceeded the allotted time and was scheduled to continue on April 2, 2014. In the meantime, the guardian ad litem (GAL) notified the court he would be filing a petition to terminate parental rights to all three children. The April 2, 2014 hearing combined the permanency hearing and the termination hearing.

The juvenile court issued an order terminating the mother's parental rights to all three children on June 20, 2014. It stated, in part:

> The mother was offered three visits a week with two additional visits with [A.C.]. She missed approximately one visit a week and at times she did not stay for the additional hour with [A.C.]. The visits have been fully supervised. When the mother attends her visits, they go reasonably well with the exception of power struggles with the children. Her parenting is of concern during those power struggles. There was a period of time that the mother missed a third of her visits and on one occasion the mother decided not to visit the children because she had friends in the home and did not want to make them leave.
> The Department remains concerned about the physical safety of the children if they were in her care. The mother has exposed the children to violence and to individuals using illegal substances. She dismisses concerns about such exposure.
> The mother is currently living in a home owned by her grandparents. The residence is cleaner than when the case first opened, but there have still been instances where there were dog feces on the floor. The provider noticed two dogs, two cats and a bird in the home. The mother states that she was only watching the dogs and had them at the house so the children could play with them. The court does not find the mother's testimony credible. The mother continues to ignore the University of Iowa Hospital's notice that [A.C.] should not be exposed to second hand smoke as it is bad for her health. She testified that she made her environment smoke free, yet on cross examination the mother admitted that she exposed the children to second hand smoke and continued to do so

until it was detected by the provider. In March of 2014 [A.C.] was hospitalized for several days due to breathing problems. The mother was unable to understand that smoke could create problems for the child. The Court noted that the mother's exhibits smelled heavily of smoke. While [A.C.] was in the hospital, the mother only visited one time and only for one hour. The nurses stated that the mother was not internalizing information given to her about [A.C.'s] breathing problems.

The mother has attended therapy, but the Court is concerned about her ability to internalize that she is being taught. She continues to disagree with the Department's assessment of her ability to parent her children and there are concerns that she will not keep the children safe. The mother was encouraged to attend [T.O.'s] play therapy but did not do so for many months.

The parents have not been consistent in attending medical appointments for the children. The mother testified that she has not attended medical appointments because of transportation issues and because at times she is unable to get along with the foster mother.

The Court's main concern through the case has been the mother's lack of judgment regarding the individuals she allows around her children. [T.O.] has revealed that he was sexually abused by [M.O.'s father]. The mother stated that if she didn't see it with her own eyes, then she does not believe it. Discussions between the mother and [T.O.'s] therapist have taken place over the course of the case. Those interactions were not always positive. [T.O.'s therapist] testified she was concerned that the mother's automatic reaction was to disbelieve her child's disclosure of the abuse. The mother believed that if the abuse happened, the child would have a negative reaction to the abuser. When the therapist attempted to have input, the mother was not open to feedback. The therapist and other professionals have noted that the mother is defensive and not open to suggestions. The therapist also testified that after having [T.O.] in therapy for over a year, it was not in his best interest to have his mother involved in therapy.
. . .
The Department of Human Services worker, the main provider to the family and the guardian ad litem do not believe that the children can be returned to any of the parents at this time.[2]

The juvenile court terminated the mother's parental rights to all three children

pursuant to Iowa Code section 232.116(1)(d). The court also terminated the

---

[2] We acknowledge, and have no reason to dispute, the mother's contention that she is the titleholder of her home, not her grandparents.

mother's parental rights to M.O. and A.C. pursuant to section 232.116(h) and T.O. pursuant to section 232.116(f).[3]  The mother appeals.

**II. Standard of Review.**

Our review of termination decisions is de novo.  *In re P.L.*, 778 N.W.2d 33, 40 (Iowa 2010).  We give weight to the juvenile court's findings, especially assessing witness credibility, although we are not bound by them.  *In re D.W.*, 791 N.W.2d 703, 706 (Iowa 2010).  An order terminating parental rights will be upheld if there is clear and convincing evidence of grounds for termination under section 232.116.  *Id.*  Evidence is "clear and convincing" when there are no serious or substantial doubts as to the correctness of the conclusions of law drawn from the evidence.  *Id.*

**III. Discussion.**

Iowa Code chapter 232 termination of parental rights follows a three-step analysis.  *P.L.*, 778 N.W.2d at 39.  The court must first determine whether a ground for termination under section 232.116(1) has been established.  *Id.*  If a ground for termination has been established, the court must apply the best-interest framework set out in section 232.116(2) to decide if the grounds for termination should result in termination of parental rights.  *Id.*  Finally, if the statutory best-interest framework supports termination of parental rights, the

---

[3] In the order terminating the mother's parental rights, the juvenile court denied the State's request to terminate the mother's parental rights to T.O. pursuant to section 232.116(f) because of a misstatement of his age at the time of the termination order. Following the GAL's motion for order nunc pro tunc and motion for order for expanded findings, the court filed an order on June 27, 2014, which corrected T.O.'s age and granted termination pursuant to section 232.116(f).

court must consider if any of the statutory exceptions set out in section 232.116(3) weigh against the termination of parental rights. *Id.*

### A. Grounds for Termination

When the juvenile court terminates parental rights on more than one statutory ground, we may affirm the order on any ground we find supported by the record. *D.W.*, 791 N.W.2d at 707. Iowa Code section 232.116(1)(h) provides that termination may be ordered when there is clear and convincing evidence the child is three years or younger, has been adjudicated a CINA, has been removed from the parent's custody for at least six of the last twelve months, and cannot be returned to the parent's custody at the time of the termination hearing. Section 232.116(1)(f) provides that termination may be ordered when there is clear and convincing evidence the child is four years of age or older, has been adjudicated a CINA, has been removed from the parent's custody for at least twelve of the last eighteen months, and cannot be returned to the parent's custody at the time of the termination hearing.

Here, the mother does not dispute each of the children is of the proper age, has been adjudicated a CINA, and has been out of her custody for the last six or twelve months as required for each respective child. The mother maintains she is in compliance with the case plan and the children could be returned to her care at the time of the termination hearing. In the alternative, she maintains the juvenile court should have awarded her additional time to demonstrate termination of her parental rights was not necessary. The mother also contends, for the first time, that her constitutional due process rights were violated when the juvenile court allowed the GAL to file a petition to terminate the her parental

rights while the permanency hearing was ongoing. Because the mother did not raise the due process argument before the district court, it is waived. *See Meier v. Senecaut*, 641 N.W.2d 532, 537 (Iowa 2002) ("It is a fundamental doctrine of appellate review that issues must ordinarily be both raised and decided before the district court before we will decide them on appeal.").

**1. Has the Mother Sufficiently Complied with Services?**

A parent's significant improvement alone is not sufficient to return the children to the family home. We acknowledge that the mother has recently been more engaged with the services offered to her by DHS. She has participated in therapy, and her therapist reports she is making progress. The family's care coordinator testified that there was significant improvement in the home regarding cleanliness and safety. Additionally, the mother reports she has ended her relationship with M.O.'s father, a sex offender. However, we do not find the children could be returned to her care at the time of the termination hearing.

The mother was also attending visits more regularly during the time leading up the termination hearing, but she had missed approximately one-third of all scheduled visits since September 2013. The visits were still fully supervised in part because of her power struggles with the children during visits.

The care coordinator testified the mother still has several animals in the home and that he found animal feces on the floor. The mother claimed she was pet-sitting two of the animals in order to allow the children to interact with them during visits, but the juvenile court specifically found her testimony on the matter was not credible. The coordinator also testified that while the main floor of the

home was in much better condition, the second level needed work to make it safe for the children.

To the mother's credit, she had been consistently attending therapy since June 2013 for a total of ten sessions. Her therapist opined that during that time, the mother's "mental health status . . . improved" and she was "demonstrating the use of good judgment during [the] sessions." The therapist qualified those comments, stating:

> I cannot comment on [the mother's] ability to parent. I have never seen her with her children or met her children. . . . [The mother] continues to disagree with many of the Iowa Department of Human Services' thoughts regarding her parenting abilities; however, again there is no way for me to determine her parenting abilities, not having observed her relationship with the children directly.

Additionally, although the mother has ended her relationship with M.O.'s father, there is ongoing concern about her judgment regarding who she allows in her children's lives and her ability to keep to the children safe because she dismisses concerns about any exposure to harm.

**2. Additional Time.**

In the alternative, the mother maintains the juvenile court should have awarded her additional time to demonstrate termination of her parental rights was not necessary. The district court awarded the mother an additional six months in the permanency order issued in regard to T.O. and M.O. on September 12, 2013. T.O. and M.O. have been removed from the mother's custody since January 2013, and A.M. has been removed since her birth in June 2013. Unfortunately the mother delayed any meaningful participation in services until September 2013. Even after September 2013, she missed approximately one-third of the

visits with the children. At the time of the termination hearing, visitation was still fully supervised. "In order to continue placement for six months, the statute requires the court to make a determination the need for removal will no longer exist at the end of the extension." *In re A.A.G.*, 708 N.W.2d 85, 92 (Iowa Ct. App. 2005). Here, we cannot conclude there is even a strong likelihood the children could be returned to the mother's care in six months time.

The children should not be required to wait in limbo in hope that the mother can become a stable and reliable caretaker. As our supreme court has stated, "[O]ur legislature has carefully constructed a time frame to provide a balance between the parent's efforts and the child's long-term best interests." *D.W.*, 791 N.W.2d at 707. Furthermore, the DHS caseworker and the GAL recommended termination. *See A.M.*, 843 N.W.2d at 111.

With respect to M.O. and A.C., we find there is clear and convincing evidence the statutory grounds for termination, pursuant to section 232.116(h), have been met. With respect to T.O., there is clear and convincing evidence that grounds for termination of the mother's parental rights exist under section 232.116(1)(f).

### B. Best Interests of the Children.

Even if a statutory ground for termination is met, a decision to terminate must still be in the best interests of a child after a review of section 232.116(2). *P.L.*, 778 N.W.2d at 37. In determining the best interests of the child, we give primary consideration to "the child's safety, to the best placement for furthering the long-term nurturing and growth of the child, and to the physical, mental, and emotional conditions and needs of the child." *See* Iowa Code § 232.116(2).

T.O. and M.O. have not been in their mother's care since January 2013. A.C. was removed from her mother's care at birth. We acknowledge that the children are bonded to their mother. They are also bonded to their foster mother who has indicated a willingness to adopt all three siblings if the mother's parental rights are terminated. This will enable T.O., M.O., and A.C. to achieve permanency. *See A.M.*, 873N.W.2d at 113 (citing *In re J.E.*, 723 N.W.2d 793, 802 (Iowa 2006) (Cady, J., concurring specially) (noting the "defining elements in a child's best interest" are the child's safety and her "need for a permanent home")). As the juvenile court recognized, "It is in the children's best interests to terminate the parent-child relationship so that they will have the opportunity to grow and mature in a safe, healthy and stimulating environment, free from drug activity, family dysfunction, and chaos."

We agree with the juvenile court's finding that it is in the children's best interests to terminate the mother's parental rights.

### C. Potential Grounds Not to Terminate

Iowa Code section 232.116(3) provides that "[t]he court need not terminate the relationship between the parent and child" under certain circumstances. A finding under subsection (3) allows the court not to terminate. *See P.L.*, 778 N.W.2d at 39. "The factors weighing against termination in section 232.116(3) are permissive, not mandatory, and the court may use its discretion, based on the unique circumstances of each case and the best interests of the child, whether to apply the factors in this section to save the parent-child relationship. *A.M.*, 873 N.W.2d at 113

The mother did not argue any of the exceptions or factors against termination apply in this case. Upon our de novo review, we conclude no exception or factor in section 232.116(3) applies to make termination unnecessary.

## IV. Conclusions.

In sum, the mother has made progress, but her personal progress has not directly related to being sufficiently responsible to parent her children. With respect to M.O. and A.C., there is clear and convincing evidence that grounds for termination of the mother's parental rights exist under section 232.116(1)(h). With respect to T.O., there is clear and convincing evidence that grounds for termination of the mother's parental rights exist under section 232.116(1)(f). Termination of the mother's parental rights is in the children's best interests pursuant to section 232.116(2), and no consequential factor weighing against termination in section 232.116(3) requires a different conclusion. Accordingly, we affirm termination of the mother's parental rights to all three children.

**AFFIRMED.**