# IN THE COURT OF APPEALS OF IOWA

No. 15-1765
Filed December 23, 2015

**IN THE INTEREST OF B.K. AND J.K.,**
**Minor Children,**

**B.K., Father,**
**Appellant.**

_____

Appeal from the Iowa District Court for Black Hawk County, David F. Staudt, Judge.

A father appeals the juvenile court's termination of his parental rights to his children, B.K. and J.K. **AFFIRMED.**

Robert M. Bembridge of Swisher & Cohrt, P.L.C., Waterloo, for appellant father.

Thomas J. Miller, Attorney General, and Kathrine S. Miller-Todd, Assistant Attorney General, for appellee State.

Timothy Baldwin of the Juvenile Public Defender's Office, Waterloo, attorney and guardian ad litem for minor children.

Considered by Potterfield, P.J., and Doyle and Tabor, JJ.

**POTTERFIELD, Presiding Judge.**

A father appeals the juvenile court's termination of his parental rights to his children, B.K. and J.K. He argues the court erred when it failed to authorize a six-month extension of the proceedings pursuant to Iowa Code section 232.104(2)(b) (2015). He also argues the court should have placed more emphasis on keeping his children placed together and placing them with a relative. We conclude on our de novo review that the evidence before the juvenile court did not support a determination that the need for removal of the children from their home would no longer exist after an additional six months. We further conclude that termination of the father's parental rights was supported by clear and convincing evidence and the placement of the children took into account the best interests of the children. We therefore affirm.

## I.  Background

The father has two children by the same mother, B.K. and J.K. B.K. was born in 2009. J.K. was born in 2011. The mother also has an older child, Z.W., whom the father treated as his child. Z.W. factors into the father's argument on appeal, although the termination case we now review does not directly deal with that relationship. The family has had a history of involvement with the Iowa Department of Human Services (DHS) and the juvenile court system. The children have been removed from the parents' home three times since 2012, most recently on May 7, 2014. The children have remained out of the parents' home since that time. Various DHS services have been offered to the family since the children were adjudicated to be children in need of assistance on August 27, 2012.

The father is currently in prison, serving a twenty-one-year sentence. He has been continuously incarcerated since just prior to the children's most recent removal. He had not seen his children for one and one-half years at the time of the September trial of the State's petition for termination of parental rights. The father was sentenced on January 5, 2015, on multiple counts: six separate counts of theft in the third degree, one count of burglary in the third degree, and one count of felon in possession of a firearm. He will be eligible for parole in either December 2015 or January 2016, although the record is somewhat conflicting on this point. Either way, the father's incarceration has lasted for the duration of the children's most recent removal, and accordingly he has not had any face-to-face contact with them during that time period. By all accounts, he has been consistently involved in his children's lives to the extent that one can be while in prison, participating in regular phone conversations and mailing his children letters, drawings, and DVD recordings of himself reading books aloud to them.

However, there is no guarantee the father will be granted parole when he goes before the parole board. Furthermore, he has a long history of trouble when not in the controlled environment of prison. He has a criminal record that by his own description is "horrible looking," and has been in prison before. He has some mental health problems and has had significant substance abuse issues involving opiates, methamphetamine, and marijuana that appear to have ceased only because of his incarceration. In the past, he has intentionally falsified the results of drug tests, going so far as to use a "Whizzinator"—a

prosthetic penis with a reservoir used to provide clean urine samples consisting of urine that is either someone else's or synthetic.

When he is paroled, significant time and services would be required to ensure the safety of the children in his care. On this point, a social worker from DHS testified at the permanency review and termination hearing held on September 3, 2015. She recommended termination of the father's parental rights:

> ASSISTANT COUNTY ATTORNEY: Do you think it's in the children's best interests to wait until—and give him additional time to see if he's, in fact, paroled and then comes into the community to be a parent for [B.K.] and [J.K.]? DHS SOCIAL WORKER: No, I do not.
> ASSISTANT COUNTY ATTORNEY: Why not? DHS SOCIAL WORKER: He's serving a twenty-one-year sentence and he's—at this point I think he'd be a year-and-a-half, maybe a little more than a year-and-a-half into that sentence and I don't—there's no guarantee that he would be paroled. I think additional time is going to prolong the inevitable. If he gets out—Let's say that he were to get out in December, that would still not give him adequate time to address the issues that we would need to see addressed to safely return the children to his care.
> ASSISTANT COUNTY ATTORNEY: Do you think it would be difficult to—Even if he was granted the time and was out in January or December, do you think it would difficult to know what is what given his admission of attempts to deceive in the past? DHS SOCIAL WORKER: I do think that he has—he has really opened up and been much more honest since he has been incarcerated. I don't know if that would continue if—if he were not under strict supervision. I don't know. That's hard to answer.

At the same hearing, the father testified by telephone and was asked how much time he thought he would need in order to establish that his children could be returned to his care. His answer echoed the estimation of the time necessary for reunification voiced by the DHS social worker:

> ASSISTANT COUNTY ATTORNEY: It was your testimony I need more time. How much time do you need? THE FATHER: I

need to be released in potentially sixty more days. Now I know there's not a guarantee, the parole board has the final say, but my counselor is pretty confident that I will be released. And then I need, you know, ninety days to six months to show the state clean UAs, counseling, and mental health.

On October 8, 2015, the juvenile court issued an order terminating the parental rights of both the father and the mother to B.K. and J.K.[1] With respect to the father specifically, the juvenile court stated as follows:

> [The father] was incarcerated prior to the latest removal of the children. He has not had face-to-face contact with his children in over one-and-a-half years because of his imprisonment. He has attempted to maintain contact through writing and telephone calls. There are no services available in prison for [the father]. At this time he is unavailable as a parent. He has been ordered to serve a sentence that is up to twenty-one years in prison. He has served approximately a year-and-a-half of that sentence. It is possible that he could be paroled in December of 2015 or January of 2016. There is no certainty that he will be paroled. [The father] has recorded videos of himself providing a personalized reading of a children's book while incarcerated.
> Prior to [the father]'s imprisonment, the Department of Human Services had concerns about his substance abuse problems, domestic violence problems, and the stability of his mental health. It is clear that prior to his entry in the prison system, he made little effort to address his substance abuse issues as he was using methamphetamine and submitted adulterated drug tests. There were allegations of domestic violence. There is no assurance that upon his release that he will not return to his prior life of consuming methamphetamine and domestic violence. The Court is also concerned that it will not be in the children's best interests to wait for [the father] to be released on parole to determine if he could be placement for the children. Should [the father] return in January, he would be on parole and would not be a potential placement for at least six months to a year depending upon his behavior and whether he lives a drug-free lifestyle.

The juvenile court then explained its reasons for terminating the father's parental rights:

---

[1] The mother also had her parental rights terminated as to Z.W., but she has not appealed the termination of her parental rights as to any child.

The Court concludes the State has established by clear and convincing evidence that the parental rights of [the father] should also be terminated. [The father] has been incarcerated for over the last year-and-a-half. Although he has maintained contact with his children, there is no clear and convincing evidence at the present time that the children could be returned to the custody of [the father]. Should [the father] be paroled in January of 2016, he would not be able to establish a placement for the children within the six month time frame required under the permanency statute. [The father] also has no proven track record of being a successful parent. He has accusations of domestic violence, admissions of drug use, and protective assessment summaries for denial of critical care to his children on two occasions. When not incarcerated, [the father] has failed to address his substance abuse issues, his mental health issues, and his violent tendencies. The Court finds that pursuant to Iowa Code § 232.116(1)(f) that the children have been out of [the father]'s custody pursuant to the statuted [*sic*] time frames and that there is clear and convincing evidence that at the present time the children cannot be returned to the custody of the children's parent, in this case [the father].

The father appeals.

## II. Standard of Review

We conduct a de novo review of proceedings terminating parental rights. *In re A.M.*, 843 N.W.2d 100, 110 (Iowa 2014). An order terminating parental rights will be upheld if there is clear and convincing evidence of grounds for termination under Iowa Code section 232.116. *In re D.W.*, 791 N.W.2d 703, 706 (Iowa 2010). Evidence is "clear and convincing" when there are no serious or substantial doubts as to the correctness of conclusions drawn from it. *Id.* We give weight to the factual determinations of the juvenile court, particularly regarding the credibility of witnesses, although we are not bound by them. *Id.* The primary consideration of our review is the best interests of the child. *In re A.B.*, 815 N.W.2d 764, 773 (Iowa 1012).

**III. Analysis**

Termination of parental rights under Iowa Code chapter 232 follows a three-step analysis. *See In re P.L.*, 778 N.W.2d 33, 40 (Iowa 2010). First, the court must determine if a ground for termination under section 232.116(1) has been established. *Id.* Second, if a ground for termination is established, the court must apply the framework set out in section 232.116(2) to decide if proceeding with termination is in the best interests of the child. *Id.* Third, if the statutory best-interests framework supports termination of parental rights, the court must consider if any statutory factors set forth in section 232.116(3) should serve to preclude termination. *Id.*

The father does not argue that the juvenile court lacked clear and convincing evidence to terminate his parental rights pursuant to Iowa Code section 232.116(1)(f). Instead, he argues that the juvenile court should have invoked Iowa Code section 232.104(2)(b) in order to authorize a six-month extension of the children's placement after the permanency hearing to give the father additional time to meet the requirements of the case plan. Section 232.104(2)(b) allows a juvenile court to:

> [e]nter an order pursuant to section 232.102 to continue placement of the child for an additional six months at which time the court shall hold a hearing to consider modification of its permanency order. An order entered under this paragraph shall enumerate the specific factors, conditions, or expected behavioral changes which comprise the basis for the determination that the need for removal of the child from the child's home will no longer exist at the end of the additional six-month period.

Granting a parent additional time under this statutory subsection is one of several options available to a juvenile court following a permanency hearing; it is not a

matter of right. See Iowa Code § 232.104(2)(b); *In re H.L.*, No. 14-0708, 2014 WL 3513262, at *3 (Iowa Ct. App. July 16, 2014). Moreover, the express language of the statute requires a court granting such an extension to make a determination that the need for removal will no longer exist at the end of the six months. *In re A.A.G.*, 708 N.W.2d 85, 92 (Iowa Ct. App. 2005). Finally, a judge considering a six-month extension under the statute should "constantly bear in mind that, if the plan fails, all extended time must be subtracted from an already shortened life for the children in a better home." *Id.* at 92–93.

We find on our de novo review that the juvenile court appropriately decided against granting the father an additional six months. Given the father's ongoing incarceration, with the date of his release being speculative, the juvenile court could not make the determination that the need for the removal of the children would cease to exist at the end of a six-month extension. Even if the court had been provided a definite release date, then additional time would be required to ensure the father's success in staying away from drugs and further criminal activity.

Finally, we address the father's contention that the juvenile court should have done more to ensure the B.K. and J.K. were placed with Z.W. and that all of the children should have been placed with relatives. The father is correct that there is a statutory preference for placing siblings together, mandating that if a court orders the transfer of custody of siblings for placement, then DHS or whatever other agency receives custody "shall make a reasonable effort to place the child and siblings together in the same placement." *See* Iowa Code § 232.108(1). He is also correct that placing children with relatives is considered

one of the least restrictive placement options, and that courts "shall make the least restrictive disposition appropriate considering all the circumstances of the case" following dispositional hearings. *See* Iowa Code §§ 232.99(4), 232.102(1)(a)(1).

However, we do not believe that the placement of the children in this instance runs contrary to the best interests of the children, or that the juvenile court or DHS failed to adhere to their statutory responsibilities. Z.W. was placed separately from B.K. and J.K. only after behavioral problems necessitated that result, and the record does not suggest any viable relative placement options available for B.K and J.K. An aunt who was a potential placement option withdrew herself from consideration after a home study found significant issues with her suitability, and the father's brother and sister-in-law who were presented as another option late in the process did not follow through with the necessary home study. Testimony before the juvenile court indicated that the children were all doing exceedingly well in their placements. We find that the juvenile court's denial of an extension and ordering termination of the father's parental rights were in the best interests of the children.

**AFFIRMED.**