# IN THE COURT OF APPEALS OF IOWA

No. 20-1268
Filed March 3, 2021

**IN THE INTEREST OF E.R.,**
**Minor Child,**

**C.L., Father,**
        Appellant,

**J.R., Mother,**
        Appellant.

_____

Appeal from the Iowa District Court for Wapello County, William Owens, Associate Juvenile Judge.

Parents separately appeal the termination of their parental rights to a daughter. **AFFIRMED.**

Ryan J. Mitchell of Orsborn, Mitchell, Goedken & Larson, P.C., Ottumwa, for appellant father.

Sarah Wenke, Ottumwa, for appellant mother.

Thomas J. Miller, Attorney General, and Kathryn K. Lang, Assistant Attorney General, for appellee State.

Sam Erhardt of Erhardt & Erhardt, Ottumwa, attorney and guardian ad litem for minor child.

Considered by Bower, C.J., Greer, J., and Blane, S.J.*

*Senior judge assigned by order pursuant to Iowa Code section 602.9206 (2021).

**BLANE, Senior Judge.**

The mother and father in this appeal showed up at the emergency room at 2:30 a.m. in late-July 2019.  Their baby girl had been born in a garage three hours earlier.  Hospital staff believed the parents were under the influence of drugs or alcohol, and testing showed both the mother and baby were positive for methamphetamine.  The child, E.R., was removed.  One year later, the State moved to terminate the parents' legal rights to her.  On our de novo review, the lack of progress in reunification goals and the best interests of the child compel us to affirm the juvenile court's order terminating parental rights.

E.R. was removed from the parents at the hospital and adjudicated a child in need of assistance (CINA).  The Iowa Department of Human Services (DHS) placed E.R. in the care of foster parents with whom she has remained throughout this case.  The mother admitted she had received very little prenatal care—she had not been seen by an OB/GYN since her twenty-third-week appointment, left before seeing the doctor, and had only attended four total appointments.  The father had also been charged with felony child endangerment over the parents' abuse and neglect of their older daughter, S.L.  The abuse—the father caused S.L. to ingest cocaine—left S.L. with permanent, severe brain damage.  The parents' rights to S.L. were terminated during this CINA case.

The parents have exhibited unsafe and unstable patterns throughout the pendency of this case.  Neither parent has housing suitable for a child.  Visitations have always been fully supervised and in public.  Neither parent has consistently attended court-ordered substance-abuse or mental-health treatment.  The mother admitted to using illegal substances several times through the proceedings.

Despite being ordered to address her substance-abuse and mental-health issues, the mother has not successfully completed any program of treatment. Providers believe she is not committed to treatment, and she reports feeling depressed and sleeping most of the day. While DHS workers and other providers helped her with scheduling appointments, provided transportation, and offered support and encouragement, the mother has not consistently attended.

The mother also has not maintained employment. She picked up charges for fourth-degree theft and driving while barred. DHS has always found her hard to contact. She does not return messages, and providers have difficulty scheduling appointments and visitations with her. It was also difficult to obtain consent from her for E.R.'s medical treatment. The mother lives with a new paramour who she says is controlling. She reported he dismantled her phone so she could not be contacted. He removed the spark plugs from her car and stole her bicycle so she could not leave the house.

During most of the CINA proceedings, the father has been incarcerated pending resolution of his child endangerment charges. He finally pleaded guilty to child endangerment and neglect or abandonment of his older daughter and received a sentence of concurrent indeterminate terms of imprisonment not to exceed ten years on each conviction, suspended. Although services were offered to him in jail and the residential correctional facility, he has not completed any ordered substance-abuse or mental-health treatment.

E.R. has been with the foster parents, who are also caring for her older sister S.L., for over a year now. E.R. has a seizure disorder, and her neurologist has emphasized the need to administer her medications at precise times to prevent

seizures. The foster parents have maintained her medical regimen and a safe and stable home for her. They are also willing to adopt her.

The juvenile court terminated both parents' rights under Iowa Code section 232.116(1)(h) (2020) and, additionally, the father's rights under paragraph (n). The parents do not disagree the facts support termination on those grounds. On appeal, they raise only two issues. First, they contend the juvenile court should have given them additional time to work toward reunification. And second, they believe it was not in the child's best interests to terminate their parental rights.

"We review child-welfare proceedings de novo. The juvenile court's fact findings do not bind us, but we give them weight, particularly with regard to credibility. Our primary concern is the best interests of the children." *In re A.H.*, 950 N.W.2d 27, 33 (Iowa Ct. App. 2020) (citations omitted); *see also In re J.E.*, 723 N.W.2d 793, 802 (Iowa 2006) (Cady, J., concurring specially) (identifying safety and the need for a permanent home as the "defining elements" in the best-interests determination).

The parents argue the juvenile court should have given them additional time to work toward reunification. To grant an extension of six months, under Iowa Code section 232.104(2)(b), the court must determine the need for removal will no longer exist at the end of that time. *In re A.A.G.*, 708 N.W.2d 85, 89 (Iowa Ct App. 2005). The parents say they have made significant progress by attending visits and seeking treatment. We do not agree the parents have made sufficient progress to be able to reunify with E.R. The CINA proceedings have been marked with the parents' lack of progress in fundamental safety goals: consistently obtaining treatment for their substance-abuse and mental-health issues and

maintaining a safe and stable environment fit for a child. The parents have had their rights terminated to their older daughter for the same problems that suffuse this case. There is no indication they will be able to reunite with E.R. in six months or at any foreseeable future point.

The mother contends the juvenile court failed to consider the impact of the COVID-19 pandemic[1] on the provision of services and their ability to see their daughter in person. The pandemic response has created barriers to services, but it is the parents who have failed to utilize alternatives. Visitation was offered by video conference, and the parents did not attend consistently. Therapy services were offered remotely, and the parents did not utilize them.

The parents next contend it was not in her best interests to terminate their rights to E.R. We consider her safety; the most advantageous placement for furthering her long-term nurturing and growth; as well as her physical, mental, and emotional condition and needs. *See In re P.L.*, 778 N.W.2d 33, 37 (Iowa 2010) (discussing factors in Iowa Code section 232.116(2)). Most important, E.R. is a medically delicate child who needs meticulous and diligent attention paid to her medication and treatment. The record is replete with evidence the parents could not supply that kind of care. The parents have already inflicted severe abuse and neglect upon their older child. They obtained almost no prenatal care during the mother's pregnancy with E.R. and delivered her without obstetrical care.

---

[1] "The novel coronavirus/COVID-19 is an ongoing international pandemic. To stem the spread, governments, including the state of Iowa, implemented emergency safeguards recommended by such agencies as the Centers for Disease Control, which included social distancing and wearing of face masks." *A.H.*, 950 N.W.2d at 34 n.6.

Meanwhile, the DHS has noted E.R. is well-bonded with her foster parents. *See* Iowa Code § 232.116(2)(b) (noting it is appropriate when assessing the best interests of the child to consider the child's integration into the foster family and whether the foster family is willing to be a permanent home for the child). They have provided a safe and stable home as well as diligent medical care and are willing to adopt her.

The mother additionally argues the court should have withheld termination due to the strength of the parent-child bond. *See id.* § 232.116(3)(c) (permitting the court to forego termination if "[t]here is clear and convincing evidence that the termination would be detrimental to the child at the time due to the closeness of the parent-child relationship"). E.R. has spent her entire life with the foster family. And the disruption of the bond existing between the mother and E.R. cannot overcome the compelling need for termination in this case. *See In re A.R.*, 932 N.W2d 588, 591 (Iowa Ct. App. 2019) (explaining application of the factors under section 232.116(3) are permissive, not mandatory). We agree with the juvenile court it is in E.R.'s best interests to sever any legal tie with her parents with a view toward a permanent home through adoption.

Because we find the parents' claims have no merit, we affirm.

**AFFIRMED.**