# IN THE COURT OF APPEALS OF IOWA

No. 21-0843
Filed January 12, 2022

**IN THE INTEREST OF S.W.,**
**Minor Child,**

**L.W., Mother,**
    Appellant

_____

Appeal from the Iowa District Court for Polk County, Lynn Poschner, District Associate Judge.

A mother appeals the termination of her parental rights to her child. **AFFIRMED.**

Christine E. Branstad of Branstad & Olson Law Office, Des Moines, for appellant mother.

Thomas J. Miller, Attorney General, and Mary A. Triick, Assistant Attorney General for appellee State.

Karl Wolle, Juvenile Public Defender's Office, Des Moines, attorney and guardian ad litem for minor child.

Considered by Bower, C.J., and Greer and Badding, JJ.

**BADDING, Judge.**

Pointing to her "significantly reduced use of methamphetamine," a mother who refuses to participate in substance-abuse treatment or drug screens appeals the termination of her parental rights. She claims the State failed to prove her child could not safely be returned to her care, *see* Iowa Code § 232.116(1)(h)(4) (2021), and alternatively seeks additional time to work toward reunification. On our de novo review of the record, we find clear and convincing evidence shows that this child, who suffers from serious medical conditions, would not be safe if returned to her mother's care. An additional period of time will not eliminate the need for removal. We accordingly affirm the termination order.

## I.     *Background Facts and Proceedings.*

S.W. was born in December 2019. Her newborn nursery admission history notes the mother "has a 20.00 pack-year smoking history. . . . She reports current alcohol use of about 2.0 standard drinks of alcohol per week. She reports current drug use," including cocaine, marijuana, and methamphetamine. The attending physician recommended monitoring for fetal alcohol syndrome.

At her six-week well child appointment, S.W. weighed six ounces less than at the time of birth. The child was transported by ambulance from her primary-care physician's medical clinic to the hospital where she remained for the next six days. S.W. was diagnosed with failure to thrive and later with the suspected fetal alcohol syndrome. When told about the diagnosis of fetal alcohol syndrome, the medical notes indicate the mother "initially laughed. Then stated, 'I only drank margaritas and beer before I knew I was pregnant.'" Medical providers also identified a number of potentially serious medical conditions that required further

diagnostic testing, but the mother failed to acknowledge those concerns. Despite S.W.'s early diagnoses and health scares, the mother did not take her to appointments with the primary-care physician between the ages of four months and eight months. In total, the mother missed or rescheduled eighteen medical visits in the first ten months of the child's life. At some of the appointments the mother did attend, she had visual hallucinations and paranoia.

The juvenile court removed S.W. from the mother's care in October 2020 based on the mother's failure to follow through with the child's medical appointments. The removal order also noted that the mother had a history of abuse and neglect regarding another child to whom her parental rights had been terminated. In that proceeding, the mother admitted to using methamphetamine "off and on for the past fifteen to twenty years" and professed a belief that she could safely parent while continuing to use drugs.

After S.W. was removed, the child tested positive for methamphetamine, marijuana, and cocaine—the mother's admitted drugs of choice. During the investigation by child protective services, the mother admitted to using methamphetamine since the child's birth but claimed she did not use in the child's presence. She then failed to appear for drug testing as requested. The mother also has a number of unaddressed mental health needs. For these reasons, the juvenile court adjudicated the child to be a child in need of assistance (CINA) in November 2020.

The goal of the CINA proceedings was to reunify the mother with S.W. The case permanency plan to achieve this goal required the mother to obtain a substance-abuse evaluation, engage in mental-health therapy and medication

management, and provide random drug screens as requested by the Iowa Department of Human Services. In its March 2021 permanency order, the court described the mother's failure to do so, as well as the ongoing dangers she presented to the child:

> [The mother] has taken minimal steps to address her mental health needs. She has attended one therapy appointment and missed two. She has attended one mental health medication appointment and then missed a follow up appointment. [The mother] has not been an accurate historian of her own services providers; specifically providing the name of her therapist, until now. [The mother] explicitly refuses to provide drug screens. [The mother] has a history of drug use. This is shown as [the child] has tested positive for drugs, [the mother] reported drug use to Dr. Bush in the hospital when [the child] was born, and she has testified to methamphetamine use since [the child]'s birth. As in the prior case with [the child]'s sibling, [the mother] is unwilling or unable to recall the timeframe of her last use of methamphetamine. [The child] has fetal alcohol spectrum disorder. [The mother] reported drinking twice weekly at the time of [the child]'s birth . . . . [The mother] denies this diagnosis and now denies that she drank more than one drink during her pregnancy. [The mother] is still in a relationship with [a man] who uses PCP. [The mother] has testified previously that he is not a safe person to be around [the child], but denies this testimony now. [The mother] testified she attended a substance abuse evaluation recently but does not provide any confirmation of this. . . . [The mother] has received detailed written communication from [the department] with [the child]'s appointments and visits by email, yet she has still missed appointments and visits. [The mother]'s demonstration of consistency with [the child]'s medical care is critical given the circumstances that led to removal and adjudication.

In contrast, the court noted that since removal from the mother's care, S.W. was receiving medical care and had made developmental progress, "likely due to increased stimulation and basic nutrition." Based on the mother's lack of progress, the court modified the permanency goal to termination of her parental rights.

The State petitioned to terminate the mother's parental rights. The hearing was held in April. On June 3, the juvenile court entered its order terminating the

mother's parental rights under Iowa Code section 232.116(1)(g) and (h). The mother appeals.

## II.     Analysis.

We review termination orders de novo. *In re A.B.*, 957 N.W.2d 280, 293 (Iowa 2021). The State bears the burden of establishing the grounds for termination by clear and convincing evidence. *Id.* The mother challenges only the first step of our three-step termination analysis: the proof of the statutory grounds for termination. *See In re J.F.*, No. 19-1647, 2020 WL 110404, at *1 (Iowa Ct. App. Jan. 9, 2020) (noting that when a parent's claim relates to just one step in our analysis, "we will only address that step"). Although the mother contests both of the grounds by which the juvenile court terminated her rights, we choose to concentrate on section 232.116(1)(h). *See In re D.W.*, 791 N.W.2d 703, 707 (Iowa 2010) (stating termination may be affirmed on any ground supported by the record).

Focusing on the fourth element of section 232.116(1)(h), the mother argues that the State "failed to prove by clear and convincing evidence S.W. could not return to the custody of Mother at the present time or with a six-month extension." *See In re A.M.*, 843 N.W.2d 100, 111 (Iowa 2014) (noting the parent must be ready to resume custody by the termination hearing). In support of this argument, the mother points to her participation in supervised visits where she was appropriate with and attentive to the child. But visitation is just one piece of the puzzle, and even that was waning by the time of the termination hearing.

The mother did not obtain a substance-abuse evaluation for months after it was first recommended. The evaluation that she did obtain was suspect—it was

conducted by a therapist who was not a certified alcohol and drug clinician and based on incomplete information provided by the mother. At the termination hearing, the mother denied being addicted to methamphetamine. This was in the face of her prior admissions of drug use and S.W.'s positive drug test results. In keeping with this denial, she refused to participate in substance-abuse treatment or drug screens. *See In re A.B.*, 815 N.W.2d 764, 776 (Iowa 2012) ("[A]n unresolved, severe, and chronic drug addiction can render a parent unfit to raise children."). And despite medical providers noting signs of psychosis, the mother did not consistently attend her mental-health appointments. Perhaps most concerning is the mother's persistent refusal to believe that S.W. suffers from fetal alcohol syndrome, which is a lifelong condition, as well as her inability to adequately address S.W.'s medical needs even with assistance from the department.

Simply put, the mother's ability to provide appropriate care for the child during limited periods with supervision does not translate to an ability to safely care for the child. *See A.M.*, 843 N.W.2d at 111 (affirming termination of parental rights under section 232.116(1)(h) because "the parents were still not in a position to care for A.M. without ongoing" involvement from the department). As the case manager stated in her report to the court, "[The mother] appears to have good parenting skills when she is sober and calm. The concern is she cannot provide adequate supervision when under the influence of illegal drugs." And the mother has done very little to address her substance use or mental health. She essentially concedes this in her brief, noting that while she took some initial steps, she still "has additional steps to take."

Basically, the mother argues that the child could be returned to her care in six months if she is granted an extension of time, and she asks for that extension. Under Iowa Code sections 232.104(2)(b) and 232.117(5), the court may continue placement of the child for an additional six months if it determines that the need for removal of the child will no longer exist at the end of that period. There is nothing in the record to support such a finding. The mother has done next to nothing to address the concerns that led to the child's removal and the CINA adjudication. When asked what would be gained from a six-month extension, the mother answered that she could have more therapy sessions to address the passing of her mother and figure out "what support system [she has] or what resource systems" are available to her.[1]

"The judge considering [extending the time of permanency] should . . . constantly bear in mind that, if the plan fails, all extended time must be subtracted from an already shortened life for the children in a better home." *In re A.C.*, 415 N.W.2d 609, 614 (Iowa 1987). Iowa Code section 232.116(1)(h) allows termination of parental rights of a child age three or younger after six months. *See also In re C.B.*, 611 N.W.2d 489, 494 (Iowa 2000). Once the statutory period has passed, "termination proceedings must be viewed with a sense of urgency." *Id.* at 495. With nothing to indicate that the mother has committed to addressing her

---

[1] To the extent the mother claims that the department failed to make reasonable efforts to reunify, we find that claim has been waived. *See In re A.A.G.*, 708 N.W.2d 85, 91 (Iowa Ct. App. 2005) ("The Department has an obligation to make reasonable efforts toward reunification, but a parent has an equal obligation to demand other, different, or additional services prior to a permanency or termination hearing.").

substance use or mental health in a meaningful way that will lead to permanent change within six months, we affirm the termination of her parental rights.

**AFFIRMED.**