**In the Interest of A.A.G., S.M.G., and M.D.M., Minor Children,**

**D.D.S., Mother, Appellant.**

No. 05–1172.

Court of Appeals of Iowa.

Oct. 12, 2005.

 

Shawn M. Harden, Independence, for appellant.

Thomas J. Miller, Attorney General, Bruce Kempkes, Assistant Attorney General, Allan W. Vanderhart, County Attorney, and Karl Moorman, Assistant County Attorney, for appellee State.

Kelly Smith of Kelly J. Smith, P.C., Waterloo, guardian ad litem for minor children.

John Rausch of Rausch Law Firm, Waterloo, for father of A.G.

C.G., Waterloo, pro se, father of S.G.

Robert Rausch of Rausch Law Firm, Waterloo, for father of M.M.

Timothy J. Luce of Anfinson & Luce, P.L.C., Waterloo, for intervenors.

Rick Morris of Beecher, Field, Walker, Morris, Hoffman & Johnson, P.C., Waterloo, for intervenors.

Considered by SACKETT, C.J., and MAHAN and MILLER, JJ.

SACKETT, C.J.

Denise, the mother of Steven, Michael, and Aliah,[1] appeals from the juvenile court permanency order placing Steven in the sole custody of his father, Michael in the guardianship of his maternal aunt and uncle, and Aliah in the sole custody of her father. The mother raises six issues on appeal that generally relate to the sufficiency of the evidence and the State's provision of reasonable services for reunification. She also asserts the court should have given her another six months before establishing permanency for the children. On de novo review, we affirm the juvenile court's permanency order.

## I. Background facts and proceedings.

Denise, aged thirty-seven at the time of the order on appeal, first used illegal drugs at age fifteen. In January 2004 the Department of Human Services (Department) investigated allegations of unsafe and unsanitary conditions in the home, including the presence of illegal drugs and drug paraphernalia. A child abuse assessment completed in February was founded for denial of critical care. Michael and Aliah tested positive for exposure to methamphetamine. In April Denise, her adult daughter, and two others were arrested for possession of methamphetamine and possession of precursors for manufacturing methamphetamine. The Department removed the children from Denise's home. Steven, born in 1987, was placed initially with his maternal grandmother. Michael, born in 1997, and Aliah, born in 2002, were placed with their maternal aunt and uncle.

In August the Department sought a modification of the dispositional order asking for Aliah to be placed with her father. The juvenile court found there was no material and substantial change in circumstances to justify the requested modification. In October, pursuant to a grant of concurrent jurisdiction, the district court modified the decree of dissolution between Denise and Steven's father to place Steven, who turned seventeen in October, in

---

1. Denise has other children who are not involved in this appeal.

his father's primary physical care with liberal visitation for Denise.

The Department offered Denise family-centered services, substance abuse treatment, and a psychological evaluation. It also recommended that she participate in stress management, marital therapy, individual counseling, and drug testing. Denise and her husband tested positive for methamphetamine use in October. She also tested positive for marijuana and cocaine. In mid-October, Denise's husband, Danny, had her committed to the psychiatric ward at a hospital.

A November review order found:

While the department has attempted to provide reunification services to the children's mother, she has not been availing herself of the same. Additionally, her mental health has deteriorated. It is reported that she had two recent psychiatric hospitalizations. She had not participated in substance abuse treatment since her release from the hospital. She had been refusing drug testing until November 23 when she tested positive. She and her husband Danny are not participating in marriage counseling. Visits now have been temporarily suspended. The children's mother has not done those things necessary to show by a preponderance of the evidence that return of the children to her custody would not subject them to adjudicatory harm. It remains contrary to the children's welfare to be placed with their mother.

A January 2005 ninety-day progress report from Families First Counseling Services in Waterloo reported:

Denise has been absent from providers since October of 2004. Denise refuses to work with any providers and continues to struggle with participating in random U.A. drops. When Denise has dropped she has been dirty for drugs. . . . Due to Denise's refusing to participate in family therapy services with said providers, there have been no visits between herself and her children. Denise was sent a letter stating the minimum requirements for her to complete in order for visitation to continue. Denise is currently attempting treatment at MECCA in Iowa City in hopes of fighting her drug use.

. . . .

Denise continues to place herself at risk and the future of having her children return to her care. . . . Denise continues to locate various other "avenues" in order to escape the issues and concerns at hand, which include her drug use and mental health.

. . . .

Denise has made little progress due to refusing to work with the various providers that have been assigned to the case. Denise continues to place blame on everyone else except herself. Denise continues to refuse any services that involve DHS involvement.

In February 2005 the district court, pursuant to a grant of concurrent jurisdiction, placed Aliah in the sole custody of her father. The February ninety-day progress report noted Denise "is currently seeking substance and mental health counseling . . . . [but] continues to not cooperate with DHS and is constantly dodging the expectations set forth." Denise requested a different family-centered services provider, so the Department engaged another provider for her in February. Denise, however, did not keep any appointments set by the agency between February and April, so no services or visitation were provided.

In its final permanency recommendations before the permanency hearing in April, the Department advised the court:

Denise and Danny ... have not participated in family centered services since October of 2004. Denise has refused a variety of times to sign releases to the Department for a variety of agencies to include Horizons, Covenant Hospital, Allen Hospital, and MECCA. Denise has not contacted DHS for approved visitation with her children and there has been a lack of participation in services to include substance abuse, mental health, marriage counseling as well as therapy and skill development. Numerous letters have been sent to Denise to have releases signed and/or arrange for her and Danny's participation in services and visitation however Denise has failed to respond to DHS and provider's requests.

The hearing on permanency took place in mid-April and late June. Denise produced evidence she had completed phases I and II of the chemical dependency treatment at Horizons in mid-April. The certificate of completion indicated ninety days of sobriety. She had four clean drug screens in May. Danny completed an outpatient chemical dependency treatment program in mid-April. Denise and Danny were participating in marriage counseling at their church. Denise had completed five sessions of mental health counseling. She attended scheduled visitation with the children in May and June.

The juvenile court found:

On the surface, it would appear the children's mother has accomplished a number of the things necessary for her to regain custody of her children or at least to recommence visitation with them. Her progress occurred, however, only over the last two months and immediately prior to the permanency hearing and whether this can be sustained over the long-term is unknown. Without any recent random drug test results, the court

is not clear whether the chemical dependency of the children's mother has been fully remediated. Her continued minimization and rationalization of her past use is not a positive prognosticator of future sobriety.

The court acknowledged Denise's recent positive work in substance abuse, mental health, and marriage counseling. It carefully considered the ages, circumstances, and district court actions concerning Steven and Aliah in determining whether to allow Denise an additional six months to work toward reunification.

Concerning Steven, the court noted he was doing well living with his father and step-mother and would reach the age of majority in mid-October, 2005. "Allowing his mother an additional six months prior to a permanency decision will merely allow the child to reach his majority." The court found "remaining in his father's custody while having regular contact with his younger siblings" was best for Steven.

Michael had been in his maternal aunt and uncle's care for a year. Michael's father did not seek custody of his son, indicating he works long, unpredictable hours, frequently away from home. He favored establishing a guardianship with the aunt and uncle, but had not taken any steps to do so despite a plan for a guardianship arrived at during a family team meeting in January. Michael had indicated a preference to live with his father, but found staying with his aunt and uncle acceptable. The court found the aunt and uncle had provided excellent care and had established a strong bond with Michael. Considering all the changes Michael had endured, some of which were causing some emotional upset, the court found "Michael requires a permanent placement and such is available with the [aunt and uncle]."

Aliah presented the most difficult decision for the court because the aunt and

uncle had provided excellent care, but when her father sought custody of her, "a substantial custody battle" ensued between him and the aunt and uncle. The Department recommended that Aliah be placed with her father, and as noted above, had sought that placement initially in August 2004. The district court granted him sole custody in February 2005 and Aliah lived with him but visited the aunt and uncle on alternating weekends. The juvenile court made detailed findings about the father's past failures in prior relationships, in supporting his other children, and abusing alcohol. The court found he had made substantial changes and improvements, was in a stable and healthy marital relationship, was not abusing alcohol, was employed and would be able to provide for Aliah, and had made arrangements to pay child support arrearages. Aliah is emotionally attached to him. He and his wife were cooperative with the Department and service providers. The court found:

> Given Aliah's age of only three and continued problems in transitioning between the homes of the [aunt and uncle] and her father, it is critical that a permanent placement decision be made for her. It is not in her best interest to allow her mother an additional six months to remedy the problems that required her removal. Too many unanswered questions remain regarding the ability and motivation of the child's mother and step-father ... to parent the child exist. Were the juvenile court case to close, Aliah would be placed in the custody of her father by virtue of the District Court custody order.

The court further found the Department provided reasonable reunification services. It noted Denise's progress had been minimal and extremely late. It expressed concern with Danny's lack of cooperation with services.

The court transferred sole custody of Steven and Aliah to their fathers under Iowa Code section 232.104(2)(d)(2) (2005) and transferred guardianship and custody of Michael to the aunt and uncle under section 232.104(2)(d)(1) with twice-monthly visitation with Denise. It also ordered visitation between the children, finding "continued contact with each other through visitation is critical."

## II. Scope of review.

Our review of permanency orders is de novo. *In re K.C.,* 660 N.W.2d 29, 32 (Iowa 2003). We review both the facts and the law and adjudicate rights anew on the issues properly presented. *In re H.G.,* 601 N.W.2d 84, 85 (Iowa 1999). We give weight to the juvenile court's findings, but are not bound by them. *In re N.M.,* 528 N.W.2d 94, 96 (Iowa 1995).

## III. Claims on appeal.

Denise presents six claims for our review: (1) the State did not meet its burden of proof for a permanency order because it did not present any testimony or evidence; (2) Denise showed by a preponderance of the evidence that the children could safely be returned to her home; (3) the State did not provide reasonable reunification services; (4) because of the progress Denise made toward remedying the problems that led to the children's removal, either they should have been returned to her care or she should have been given an additional six months for reunification; (5) the State did not present convincing evidence the children could not be returned home, so the court was required either to return them or give Denise an additional six months for reunification; and (6) the State did not present convincing evidence that services were offered to correct the situation that led to the children's removal.

The State views these issues basically as raising claims in two areas, the reasonableness of efforts made at reunification and the proper placement of the children (whether they could be returned immediately or Denise should be given an additional six months). It contends error was not preserved on the reasonable-efforts issues because Denise did not request any additional or different services before the permanency order.

## IV. Analysis.

■ *Reasonable efforts.* We address claims three and six together because they relate to the provision of reasonable services for reunification. Following an uncontested review hearing in late November 2004 the court listed services offered to Denise, including: family-centered services including family therapy and skill development, stress management, marital therapy, individual mental health treatment and medication monitoring, substance abuse evaluation and treatment, psychological and psychosocial evaluations, random drug tests, and visitation. No appeal was taken from this order. Denise did not request different or additional services at that time, but rather either refused services or refused to sign releases needed to monitor the provision of services and compliance with case permanency plan requirements. She made one request for a different service provider in January 2005 and the Department ordered the change in February. Denise did not attend any appointments with the new provider. Instead of requesting different or additional services, Denise and Danny sought out their own services for substance abuse treatment, marital counseling, and mental health treatment. They provided some evidence to the court at the permanency hearing concerning these services, but provided no means for the Department or the court to verify progress toward meeting the case

permanency plan requirements. The Department has an obligation to make reasonable efforts toward reunification, but a parent has an equal obligation to demand other, different, or additional services prior to a permanency or termination hearing. *See In re S.R.*, 600 N.W.2d 63, 65 (Iowa Ct.App.1999); *In re H.L.B.R.*, 567 N.W.2d 675, 679 (Iowa Ct.App.1997). We conclude Denise has not preserved these claims for our review on appeal.

■ *Returning the children to Denise's care.* Claims two and five both address whether or not the children could safely be returned to Denise's care. She contends both that she provided evidence they could be returned and that the State did not prove they could not be returned.

■ Iowa Code section 232.102(9) provides for the return of a child from out-of-home placement "if the court finds by a preponderance of the evidence that the child will not suffer harm in the manner specified in section 232.2, subsection 6." The adjudicatory harm requiring continued removal does not need to be the harm that necessitated the initial removal from the home. *In re M.M.*, 483 N.W.2d 812, 814 (Iowa 1992). The statute places the burden of proof on the party seeking to have a child returned to the home. Iowa Code § 232.102(9). Denise argues she presented evidence she and Danny had addressed their substance abuse problems and no contrary evidence was presented. She provided a letter from a person at her church that described the marital counseling she and Danny are participating in at church. She attended some mental health counseling sessions in late 2004. She did not mention her pending felony drug charges. She asserts she "made substantial progress toward remedying the problems which led to her children's removal from the home."

The State has the duty to see every child within its borders receives proper care and treatment and must intercede when parents abdicate that responsibility. *In re I.L.G.R.*, 433 N.W.2d 681, 689 (Iowa 1988). In circumstances such as those before us, we consider what the future likely holds for the children if they are returned. Insight for that determination may be gained from evidence of a parent's past performance, for that performance may be indicative of the quality of the future care the parent is capable of providing. *In re L.L.*, 459 N.W.2d 489, 493 (Iowa 1990); *In re Dameron*, 306 N.W.2d 743, 745 (Iowa 1981). Case history records are entitled to much probative force when a parent's record is being examined. *In re S.N.*, 500 N.W.2d 32, 34 (Iowa 1993).

Although Denise provided evidence she has made some progress at addressing the concerns that led to the children's removal, this progress is very recent and she has not demonstrated any changes will last. Her participation in substance abuse treatment is commendable, but her unwillingness to submit to random drug screens or to give the Department the authority to verify she is remaining drug free concerns us. Given her admission she was addicted to methamphetamine, her past failure to complete treatment successfully, and the recency of her treatment, we cannot find the children would not be at risk if returned to her care. The statutory provisions are preventative as well as remedial. *See In re Dameron*, 306 N.W.2d at 745. We also are concerned about the resolution of the felony drug charges against her. They could result in her imprisonment. This potential for her removal from the home and her resulting inability to care for the children is another risk that prevents us from finding the children would not be at risk if returned to her care. We, like the juvenile court, find the children's continued removal from Denise's care is in their interest and protects them from adjudicatory harm.

*Continuation of the placement.* Denise's claim number four is that, because of her continued substantial progress in remedying the problems that led to the children's removal, their placement should be continued for another six months and she should receive services to continue to work toward reunification. Iowa Code section 232.104(2)(b) sets forth the option of continuing placement for six months after a permanency hearing, allowing the court to,

[e]nter an order pursuant to section 232.102 to continue placement of the child for an additional six months at which time the court shall hold a hearing to consider modification of its permanency order. An order entered under this paragraph shall enumerate the specific factors, conditions, or expected behavioral changes which comprise the basis for the determination that the need for removal of the child from the child's home will no longer exist at the end of the additional six-month period.

In order to continue placement for six months, the statute requires the court to make a determination the need for removal will no longer exist at the end of the extension. *Id.* The juvenile court was unable to make such a finding in part because of all the uncertainty caused by Denise's only recent progress and the court's inability to confirm her progress. Under some circumstances extensions could be appropriate. "The judge considering them should however constantly bear in mind that, if the plan fails, all extended time must be subtracted from an already shortened life for the children in a better home." *In re A.C.*, 415 N.W.2d 609, 613–14 (Iowa 1987), *cert. denied sub nom.*

*A.C. v. Iowa,* 485 U.S. 1008, 108 S.Ct. 1474, 99 L.Ed.2d 702 (1988).

From our de novo review of the record, we also are unable to make a finding the need for removal would no longer exist after a six-month extension. Because the children had already been out of the home for over twelve months at the time of the permanency hearing, we view the proceedings with a sense of urgency. *See* Iowa Code § 232.104(1) (setting a twelve-month period); *see also In re C.B.,* 611 N.W.2d 489, 495 (Iowa 2000) (discussing urgency in the context of termination proceedings). Denise's resistance to the services offered, her last-minute improvement, her pending criminal charges, the uncertainty of her continued sobriety, and the uncertainty concerning Danny's sobriety and their continuing relationship, all militate against a finding another six months would eliminate the need for the children's removal.

*Evidence supporting a permanency order.* Denise's claim number one is that the State did not meet its burden of proof for entry of the permanency order because it "presented no testimony or evidence at the Permanency Hearing." We address this general claim of insufficient evidence last so that we could set forth above the evidence required to address her more specific claims. Contrary to her assertion the State presented no evidence, juvenile court received the State's exhibits "A" through "J," consisting of several hundred pages including numerous reports and letters from service providers, court orders, reports and recommendations from the Department, and miscellaneous other documents.

Iowa Code section 232.104(3) enumerates the conditions that must be shown by clear and convincing evidence before the court can enter a permanency order:

3. Prior to entering a permanency order pursuant to subsection 2, paragraph "d", convincing evidence must exist showing that all of the following apply:

a. A termination of the parent-child relationship would not be in the best interest of the child.

b. Services were offered to the child's family to correct the situation which led to the child's removal from the home.

c. The child cannot be returned to the child's home.

Our discussion above of this case and Denise's claims concerning reasonable efforts and the return of the children to her care detail the clear and convincing evidence supporting conditions "b" and "c," and we will not repeat it here. The juvenile court found termination was not in the best interest of the children "because they continue to have substantial visitation and contact with their parents through their current parental and relative placements." We also find clear and convincing evidence supports condition "a." The permanency order provides for Steven and Aliah to be with their fathers and for Michael to be with his maternal aunt and uncle. It also provides for an ongoing relationship between Denise and her children and for visitation among the children.

## V. Summary.

Clear and convincing evidence supports the juvenile court's decision to enter a permanency order. The State offered reasonable services to reunify Denise with her children. Under the circumstances before us, we find the children could not be returned to Denise's care at the time of the permanency hearing. Given the uncertainty that the children could be returned to Denise's care at the end of a six-month extension, the juvenile court correctly refused to continue the dispositional order.

Through a grant of concurrent jurisdiction, the district court granted sole custody of Steven and Aliah to their fathers. Transferring guardianship of Michael to his aunt and uncle is the least restrictive placement for him under the circumstances. The permanency order provides for the stability and safety of the children, their continued relationship with each other, and their continued relationship with their parents. We affirm the juvenile court.

**AFFIRMED.**