# IN THE COURT OF APPEALS OF IOWA

No. 22-2071
Filed March 29, 2023

**IN THE INTEREST OF D.C.M.,**
**Minor Child,**

**I.C., Mother,**
  Appellant.
_____

Appeal from the Iowa District Court for Polk County, Kimberly Ayotte, District Associate Judge.

A mother appeals the termination of parental rights to her one-year-old son. **AFFIRMED.**

Teresa M. Pope of Pope Law, PLLC, Des Moines, for appellant mother.

Brenna Bird, Attorney General, and MacKenzie Moran, Assistant Attorney General, for appellee State.

Brooke J. Thompson of Miller, Zimmerman & Evans, PLC, Des Moines, attorney and guardian ad litem for minor child.

Considered by Tabor, P.J., and Schumacher and Ahlers, JJ.

**TABOR, Presiding Judge.**

A mother, Imani, asks for more time to reunify with her one-year-old son. She also argues that termination of her parental rights was not in D.C.M.'s best interests. Because Imani has not shown the kind of progress that would make reunification possible in six months, delaying permanency is not a viable option. Given her persistent mental-health, substance-abuse, and housing issues, termination is in the child's best interests.[1]

Imani acknowledged at the termination hearing that she could not yet provide a safe home for her son. *See* Iowa Code § 232.116(1)(h) (2022). Her only request was for more time to reunify. *See* Iowa Code § 232.104(2)(b). By the date of that hearing, D.C.M. had been out of her custody for about fourteen months. And the Iowa Department of Health and Human Services had been involved with the family since his birth in March 2021.

Both Imani and D.C.M. have faced tough challenges. Imani was nineteen and homeless when she found out she was pregnant. She reported many complications with the pregnancy, including hyperthyroidism, hypertension, preeclampsia, a blood clot in the placenta, and seizures. And D.C.M. was born two months premature and tested positive for THC, the active ingredient in marijuana.[2] He has health conditions that require appointments with specialists in

---

[1] We review orders terminating parental rights de novo. *In re W.T.*, 967 N.W.2d 315, 322 (Iowa 2021). Under that standard of review, the juvenile court's fact-findings are not binding on us, but we give them careful consideration. *Id.*
[2] Imani admitted using marijuana often during her pregnancy. Child protective services returned a founded child abuse report based on D.C.M.'s positive test.

endocrinology, cardiology, ophthalmology, and genetics. He is also behind in his developmental milestones.

The department removed D.C.M. from Imani's custody in September 2021 after a welfare check revealed unsanitary conditions in their home and Imani in the throes of a mental-health crisis. She had not taken D.C.M. to his doctors' appointments, and the child's weight fell below the first percentile on the growth chart, even adjusted for his premature birth. In adjudicating D.C.M. as a child in need of assistance, the court directed Imani to undergo substance-abuse and mental-health evaluations and treatment.

A year passed, and D.C.M. remained in foster care. Yet Imani did not complete a substance-abuse evaluation, continued to use marijuana, and did not effectively address her extensive mental-health needs. She lacked stable housing and employment. And she was inconsistent in attending both visits with D.C.M. and his medical appointments. When she did show up for her son, their interactions were positive. But those interactions were too few. Imani missed almost all scheduled visits with D.C.M. in the fall of 2022, prompting the service provider to note that "his mother is a stranger to him."

In its December 2022 termination order, the juvenile court highlighted Imani's "poignant testimony" and her "evident" love for her son. But the court was not optimistic about Imani's prospects for being a safe parent any time soon:

> Imani is not able to have [D.C.M.] placed in her care today. Nor is she likely to be ready to have custody of [D.C.M.] within six months. Despite the services and support that has been offered to Imani, she has yet to address her substance use. She has continued to use, and has not yet obtained even a substance abuse evaluation. Her mental health continues to negatively impact her ability to engage in services, obtain stability, and participate consistently in family

interactions.  Given her progress thus far, a six-month extension is not appropriate.

Like the juvenile court, we find little support in the record for postponing permanency.  Iowa Code section 232.104(2)(b) sets forth the option of continuing placement after a permanency hearing if the court can "enumerate the specific factors, conditions, or expected behavioral changes which comprise the basis for the determination that the need for removal of the child from the child's home will no longer exist at the end of the additional six-month period."  That statute requires the court to make an educated prediction based on a parent's progress with services.  *See In re A.A.G.*, 708 N.W.2d 85, 92 (Iowa Ct. App. 2005).  Imani has not shown sufficient headway to merit more time.

Not only must Imani show that the barriers to placing D.C.M. back in her custody will not exist in six months, but we also must consider whether that delay serves the child's best interests better than termination.  *See W.T.*, 967 N.W.2d at 323.  The best-interests test lies in Iowa Code Section 232.116(2).  Under that statute, we consider the child's safety; the best placement for furthering his long-term nurturing and growth; and his physical, mental, and emotional condition and needs.  *Id.*  Here, we focus on D.C.M.'s vulnerable medical condition.  Because Imani has not addressed her own mental-health and substance-abuse issues, she is unable to manage the medical and developmental challenges faced by her young son.  Depriving D.C.M. of a stable environment while Imani struggles to find solid footing is not in his best interests.  So we affirm the termination order.

**AFFIRMED.**