**IN THE COURT OF APPEALS OF IOWA**

No. 23-0720
Filed August 9, 2023

**IN THE INTEREST OF T.W.,**
**Minor Child,**

**E.M., Mother,**
      Appellant.
_____

      Appeal from the Iowa District Court for Polk County, Kimberly Ayotte,

District Associate Judge.

      A mother appeals the permanency order and grant of concurrent jurisdiction

in a child-in-need-of-assistance case. **AFFIRMED.**

      Andrea B. McGinn of The Law Shop by Skogerson McGinn LLC, Van Meter,

for appellant mother.

      Brenna Bird, Attorney General, and Mary A. Triick (until withdrawal) and

Mackenzie Moran, Assistant Attorneys General, for appellee State.

      Michael A. Horn of Horn Law Offices, Des Moines, for father.

      Shireen L. Carter of Shireen Carter Law Office, PLC, Norwalk, guardian ad

litem for minor child.

      Ryan R. Gravett of Gravett Law Firm, Clive, attorney for minor child.

      Considered by Bower, C.J., and Ahlers and Chicchelly, JJ.

**BOWER, Chief Judge.**

A mother appeals the permanency order and grant of concurrent jurisdiction in a child-in-need-of-assistance (CINA) case. The juvenile court's custody determination and grant of concurrent jurisdiction in the permanency order are in the child's best interests, and we affirm.

**I. Background Facts & Proceedings.**

E.M., mother, and A.W., father, are the parents of T.W., who was born in 2010. In a 2013 dissolution decree, the court ordered joint custody with T.W. in the mother's physical care; the father had visitation two nights a week and every other weekend.[1]

In 2020, the family became involved with the department of health and human services (HHS); CINA petitions were filed for the children in the mother's home based on allegations made against the mother's current husband.[2] The mother retained custody of T.W. T.W.'s behavior and mental health deteriorated, with increasing bouts of violence.

In early 2022, one of the younger siblings made allegations of sexual abuse perpetrated by T.W. T.W. also frequently had violent outbursts and displayed aggressive behaviors. T.W. was removed under a safety plan from E.M.'s care and placed in the father's custody in March.[3] T.W. continued to have several day-time visits each week with his mother and siblings.

---

[1] The mother has three other children living in her home.
[2] The CINA cases for T.W.'s siblings closed before T.W.'s permanency hearing.
[3] The father does not have any other children in his home.

In July, the juvenile court determined the mother needed to demonstrate the capacity to protect her children from abuse both inside and outside the home. For purposes of structure and separation from the other children, the court found placement of T.W. outside the mother's home was necessary.

T.W. attends therapy and takes medication to help regulate behaviors. Since living with his father, the child has been more consistent in therapy, made progress academically, and has decreased violent outbursts and behaviors at home and school. He has not progressed in addressing the allegations by his siblings. The child's therapist recommended the child stay with the father to provide stability. The child has told the HHS caseworker and his therapist that he gets overstimulated and more easily upset at the mother's home due to all the children.

The child advised his guardian ad litem he wished to stay with his father and in his new school with regular visitation with his mother and siblings. The child's therapist testified the mother and child have a good relationship but it is less stressful for the child at the father's home. The child expressed a desire to stay with the father, and his therapist opined the consistency and stability with the current custody arrangement is in the child's best interests. HHS, a court-appointed special advocate, and the guardian ad litem recommended the child stay in the father's custody and continue liberal visitation with the mother and siblings.

In March, the juvenile court issued a permanency order placing the child in the father's sole legal custody and granting concurrent jurisdiction with the district court for the father to seek a modification for custody and physical care. The mother appeals.

**II. Standard of Review.**

We review permanency orders de novo. *In re A.A.G.*, 708 N.W.2d 85, 90 (Iowa Ct. App. 2005). We give weight to, but are not bound by, the juvenile court's factual findings. *In re L.H.,* 904 N.W.2d 145, 149 (Iowa 2017). "Ultimately, our principal concern is the best interest of the child." *Id.*

**III. Analysis.**

The mother asserts the State failed to prove the child could not return to her care and the court should have granted her an additional six months for reunification. She also argues the juvenile court should not have granted the father's motion for concurrent jurisdiction, which allows him to begin custody litigation in district court.

*Permanency finding.* Our supreme court recently noted, "Although the juvenile court has the authority to transfer custody to the noncustodial parent, '[a]ny such placement is subject to the constraints in [Iowa Code] section 232.102, including the goal of returning the child to the original custodian as quickly as possible.'" *In re D.M.,* 965 N.W.2d 475, 480 (Iowa 2021) (first alteration in original) (citation omitted). If "the evidence shows the child's return to the custodial parent will not produce harm, the child is to be reunited with the [custodial] parent." *Id.* (alteration in original) (citation omitted).

The original custody order placed the child with the mother three nights a week, the father two nights a week, and alternating weekends. The child has lived with the father full time for the past year. In that time, the child has improved his self-regulation and his problem behaviors have generally decreased.

The child's behaviors are triggered when he is overstimulated, which occurs with more frequency in the mother's small home with her three other children interacting with T.W. The child has no place to retreat to when upset at the mother's house, and the mother's proposed safety plan is highly restrictive and lacking in privacy. The child is doing better in his new school and has expressed a desire to stay in the father's home, where he has his own space. The child's therapist also opined the child needs the stability, structure, and consistency in the father's home. The evidence shows returning the child to the mother is likely to harm the child's progress in emotional and behavioral regulation.

It is in the child's best interests to not return to the mother's home, and we affirm the permanency order.

*Six-month extension.* The mother asserts a substantial likelihood the child could return to her care with an additional six months for reunification. In denying the request, the court determined,

> [The mother] has been receiving services through HHS since 2020. While there certainly has been progress, [the mother] still is not [at] a point where [T.W.] can be returned to her home. The evidence does not support that in six months reunification is likely to occur based on the progress of the family. Further an extension is not in [the child's] best interest. He is able to recognize that he is more successful at his father's home and less successful in his mother's home. [The child] has anxiety and increased behaviors around court hearing dates. The uncertainty about what may happen has a negative effect on [the child's] well-being. [T.W.] deserves and needs permanency.

We agree with the juvenile court's observations. T.W. sees his mother and siblings several times a week, maintaining his relationships and place in the family. The child has made progress in many areas, but he still shuts down when discussing the allegations made by his sisters and needs to make further progress.

The child's life has been in turmoil for more than three years. A six-month extension would deprive the child of much-needed permanency and inject uncertainty into the stability of his schooling and home life. Giving primary consideration to the child's best interests, the evidence does not support a six-month extension for reunification.

*Concurrent jurisdiction.* Generally, during CINA proceedings, the juvenile court has exclusive jurisdiction over the custody, guardianship, or placement of the subject child. Iowa Code § 232.3(1) (2022). However, the juvenile court does not have authority to modify a pre-existing custodial document. *See D.M.*, 965 N.W.2d at 483 ("The primary goal of the juvenile court in CINA proceedings is reunification when parties have specifically complied with court-ordered services, not establishing or modifying custody."). The juvenile court may, upon the request of a party or on the court's own motion, "authorize [a] party to litigate concurrently in another court a specific issue relating to the custody, guardianship, or placement." Iowa Code § 232.3(2). The court's discretion "must be exercised in the best interests of the child." *In re R.G.*, 450 N.W.2d 823, 825 (Iowa 1990).

The juvenile court found the child returning to the mother's home would *not* be in his best interest, and we agree. Because a permanent placement with the father requires a modification in the dissolution decree's custody provisions, concurrent jurisdiction is necessary. We affirm the grant of concurrent jurisdiction.

**AFFIRMED.**