# IN THE COURT OF APPEALS OF IOWA

No. 23-1688
Filed January 10, 2024

**IN THE INTEREST OF L.K.,**
**Minor Child,**

**E.L., Mother,**
    Appellant.
_____

Appeal from the Iowa District Court for Linn County, Cynthia S. Finley, District Associate Judge.

A mother appeals termination of her parental rights. **AFFIRMED.**

Rachel R. McCrate of Gray, Stefani & Mitvalsky, P.L.C., Cedar Rapids, for appellant mother.

Brenna Bird, Attorney General, and Mackenzie Moran, Assistant Attorney General, for appellee State.

Julie F. Trachta of Linn County Advocate, Inc., Cedar Rapids, attorney and guardian ad litem for minor child.

Considered by Bower, C.J., and Schumacher and Buller, JJ.

**BOWER, Chief Judge.**

A mother appeals the termination of her parental rights pursuant to Iowa Code section 232.116(1)(h) (2023). Upon review, we affirm.[1]

## I.  *Background Proceedings and Facts*

The child was born in 2019. The department of health and human services (department) became involved with the family in 2021 due to allegations the father was using methamphetamine. New allegations about the father's drug use were made in October 2022. Shortly thereafter, the father was arrested for assaulting the mother. A criminal no-contact order between the parents was entered on October 10. The order remained in place throughout the case.

A temporary removal order was entered on October 10 placing the child with the paternal grandfather. The district court adjudicated the child to be in need of assistance on November 9.

Both parents had substantial drug use throughout the case. Their use was so pervasive that the child tested positive for methamphetamine on October 11. The mother tested positive for methamphetamine on October 14, October 20, and November 2, 2022. She did not test positive again after November 2.

The mother managed to progress to semi-supervised visitation in January 2023, but she violated the terms of the visitation by allowing the child to call the father. As a result, visits became fully supervised.

The mother was again able to progress to semi-supervised visits in March. But on April 19, the department learned the mother and father were still in regular

---

[1] The father's parental rights were also terminated. He does not appeal.

communication despite the protective order. The mother admitted the interactions after being confronted with photographic evidence. Ultimately, the mother admitted to near-continuous contact with the father between October 2022 and April 2023.[2] As a result, the mother's visits again returned to fully supervised.

On June 25, the mother was contacted by a woman claiming to be in a sexual relationship with the father. The woman and the mother went to the father's house at 3:00 a.m. to confront him. The father assaulted the mother when she confronted him. The mother, realizing she was in an abusive relationship, characterized this interaction as a "turning point."

On August 10, the mother gave birth to another child, T.K. T.K. is reported to be the father's child. The potential dates of conception fall within the period covered by the protective order. From this information, the district court imputed further violations of the protective order.

The termination hearing was held on August 21 and 25, 2023. The district court heard testimony from the department case manager, the maternal grandfather, the mother, the paternal grandfather, family service workers, the mother's therapist, the father's employer, and the father's coworker. On September 15, the district court terminated the mother's parental rights. The mother appeals.

---

[2] Violence was common throughout the course of the parents' relationship. Between March 26 and September 13, 2022, police received twenty-one calls for service to the parents' house.

## II. Standard of Review

We review de novo the termination of parental rights. *In re A.S.*, 906 N.W.2d 467, 472 (Iowa 2018). We give weight to, but are not bound by, the district court's fact-findings. *Id.*

## III. Analysis

When reviewing termination of parental rights, we use a three-step analysis. *Id.*; *see* Iowa Code § 232.116. First, we determine whether a ground for termination exists under section 232.116(1). Next, we determine whether termination is in the best interests of the child. Iowa Code § 232.116(2). Finally, we assess whether any exceptions preclude termination. *Id.* § 232.116(3).

*A. Grounds for Termination.* Section 232.116(1)(h) allows for termination of parental rights when four conditions are met: (i) the child is three years of age or younger; (ii) the child has been adjudicated in need of assistance; (iii) the child has been removed from the physical custody of their parents for at least six of the last twelve months, or for the last six consecutive months and any trial period at home has been less than thirty days; and (iv) there exists clear and convincing evidence the child cannot be returned to the parents' custody at the time of the termination hearing. *See In re A.M.*, 843 N.W.2d 100, 110–11 (Iowa 2014). Here, only the fourth element, whether clear and convincing evidence exists that the child could not be returned to the mother's custody at the time of the termination hearing, is at issue.

The mother claims the district court wrongfully terminated her parental rights because she satisfied the department's recommendations, there were no immediate safety concerns in her home, and the State failed to establish by clear

and convincing evidence the child could not be returned to her. The mother argues the State did not offer any evidence she was continuing to contact the father at the time of the termination hearing.

The mother's past behavior is a good indicator of her future behavior. *See, e.g.*, *In re T.B.*, 604 N.W.2d 660, 662 (Iowa 2000). The mother has consistently lied about her contact with the father, violated court orders, and acted without regard for the child's safety. The mother acknowledged she had contact with the father from October 2022 to April 2023 but only after being confronted with photographic evidence and lying to the department for months. On at least one occasion, she allowed the child to speak to the father during a semi-supervised visit in violation of her visitation agreement. While she was pregnant, the mother violated the protective order when she went to the father's house at 3:00 a.m. to "confront" the father about another romantic relationship he was engaged in. The last of these occurred only two months before the termination hearing.

In addition, the mother has never been able to progress beyond semi-supervised visits with the child. Anytime she made meaningful progress, she regressed into old patterns and was moved back to fully-supervised visits. The mother has failed to progress toward reunification, having never had unsupervised visits or trial home visits.

We, like the district court, find there is clear and convincing evidence the child could not be returned to the mother's custody at the time of the termination hearing.

*B. Best Interests of the Child.* Under step two of our analysis, we consider the "child's safety, . . . the best placement for furthering the long-term nurturing and

growth of the child, and . . . the physical, mental, and emotional condition and needs of the child." Iowa Code § 232.116(2). "It is well-settled law that we cannot deprive a child of permanency after the State has proved a ground for termination under section 232.116(1) by hoping someday a parent will learn to be a parent and be able to provide a stable home for the child." *A.M.*, 843 N.W.2d at 112 (citation omitted).

The district court found:

It is in [the child's] best interest for termination of parental rights to occur. [The child] has suffered significant trauma while in the parents' care due to their violent relationship. In over ten months, they have not demonstrated an ability to put [the child's] needs and safety before their interests in their relationship. None of the testimony at the termination trial, or that in the removal hearing for [the mother's baby, T.K.], showed that any of the family members could support an ongoing relationship between [the mother] and [the father] as being a healthy or safe one. While it appears that there may finally be some progress toward an understanding of this by [the mother], and perhaps [the father], there has not been any significant period of time in which they abided by a decision to remain separate. And given their history, the court cannot trust that they are yet willing and/or able to honor their stated intentions. A[s] the Iowa courts have acknowledged, the best predictor of the parent's behaviors in the future is measured by their past behaviors. The risk to [the child] if they should behave as they historically have, is too great. [The child] needs permanency now, not at some point in the future when [the] parents are able to demonstrate a significant period of time living separate lives not filled with domestic violence. [The child] considers [the] paternal grandfather to be [a] safe person, as well as other members of [the] paternal family. [The child's] grandfather's home is [a] "safe place." Over the course of [the child's] short life, [the child] has been cared for by [the] grandfather numerous times after violent episodes between [the] parents. It seems quite natural that [the child] would find safety in being with [the] grandfather.

We adopt the district court's reasoning. From October 2022 until the hearing, the mother claimed to be done with her relationship with the father, only to continue contact. The most recent interaction, just two months before the termination

hearing, was decidedly violent. Despite the mother's assertion she will move beyond this relationship, she lacks credibility based upon her history. The mother continually failed to put the needs and best interests of the child before her own.

The paternal grandfather has raised the child since October 2022. The child describes being happy with the grandfather and enjoys living at his house. The grandfather and other family members have expressed their willingness to adopt the child. *See In re D.W.*, 791 N.W.2d 703, 709 (Iowa 2010) (citing the child's pre-adoptive placement as a factor favoring termination under section 232.116(2)). We find termination is in the child's best interest.

*C. Permissive Exceptions to Termination.* Once the State has proven grounds for termination exist, the burden shifts to the parent to prove a permissive exception should preclude termination. Iowa Code § 232.116(3); *see also A.S.*, 906 N.W.2d at 475–76. The mother suggests her strong bond with the child should preclude termination. *See* Iowa Code § 232.116(3)(c).

Even though the child and mother love each other, love is not enough to overcome termination. The relevant exception requires clear and convincing evidence "termination would be detrimental to the child at the time [of the termination hearing] due to the closeness of the parent-child relationship." *Id.* The mother has failed to establish their bond is so strong as to outweigh the child's need for permanency. *See In re W.M.*, 957 N.W.2d 305, 315 (Iowa 2021). A stable home free from domestic violence is essential for the child's healthy development. The child has stated the mother's house feels unsafe when the parents argue. When they argue, the child sometimes resorts to hiding under the bed or in the

closet. The child feels safe with the grandfather, with whom the child has been placed for over a year.

The mother has voiced concerns about separating the children. While there is a preference for keeping siblings together, the fact one child will stay with the parent while the other cannot does not preclude termination. *See In re K.A.*, No. 18-0232, 2018 WL 1633524, at *3–4 (Iowa Ct. App. Apr. 4, 2018).

We determine no permissive exception applies.

*D. Additional Time for Reunification.* The mother claims the district court should have granted her an additional six months to work toward reunification with the child. She argues because she met department guidelines, was raising a newborn on home visits, and had not contacted the father for over two months, the court should have given her more time.

A six-month extension may be granted if the court "determin[es] that the need for removal of the child from the child's home will no longer exist at the end of the additional six-month period." *In re A.A.G.*, 708 N.W.2d 85, 92 (Iowa Ct. App. 2005) (quoting Iowa Code § 232.104(2)(b)). "The judge considering [the extension] should however constantly bear in mind that, if the plan fails, all extended time must be subtracted from an already shortened life for the children in a better home." *Id.* (citation omitted).

The mother has exhibited a pattern of dishonesty and self-destructive behavior. She has been unable to end her relationship with the father. The child cannot be expected to wait for the mother to be able to care for her child. *See In re M.M.*, No. 15-0214, 2015 WL 1332330, at *2 (Iowa Ct. App. Mar. 25, 2015). We

find the district court properly denied the mother's request for additional time to work toward reunification.

For these reasons, we affirm the termination of the mother's parental rights.

**AFFIRMED.**