**IN THE COURT OF APPEALS OF IOWA**

No. 24-0597
Filed June 5, 2024

**IN THE INTEREST OF B.W.,**
**Minor Child,**

**V.W., Father,**
　　Appellant.
_____

　　Appeal from the Iowa District Court for Polk County, Lynn Poschner, Judge.


　　A father appeals the termination of his parental rights.  **AFFIRMED.**


　　Jesse A. Macro Jr. of Macro Law, LLP, Des Moines, for appellant father.

　　Brenna Bird, Attorney General, and Mackenzie Moran, Assistant Attorney General, for appellee State.

　　Nicole Garbis Nolan of the Youth Law Center, Des Moines, attorney and guardian ad litem for minor child.


　　Considered by Ahlers, P.J., and Chicchelly and Buller, JJ.

**AHLERS, Presiding Judge.**

A child tested positive for cocaine at birth, prompting the juvenile court to remove the child from parental custody and adjudicate the child as in need of assistance. For over a year, the Iowa Department of Health and Human Services provided the family with reunification services. Those services did not result in reunification, and the juvenile court terminated both parents' parental rights. Only the father appeals, arguing the juvenile court should not have terminated his rights and should have granted him additional time to work toward reunification.

We conduct de novo review of orders terminating parental rights. *In re Z.K.*, 973 N.W.2d 27, 32 (Iowa 2022). Our review follows a three-step process to determine if a statutory ground for termination has been satisfied, whether termination is in the child's best interests, and whether any permissive exception should be applied to preclude termination. *In re A.B.*, 957 N.W.2d 280, 294 (Iowa 2021). However, we do not address any steps a parent does not challenge on appeal. *See In re P.L.*, 778 N.W.2d 33, 40 (Iowa 2010). As the father does not meaningfully address any of the three steps, we will not discuss them.[1] We will discuss the one issue the father does raise, which is whether the juvenile court should have granted him an additional six months to work toward reunification.

---

[1] The third step in the termination analysis involves assessing permissive exceptions to termination. One of those exceptions is found in Iowa Code section 232.116(3)(c) (2024), which permits the court to forgo termination when "termination would be detrimental to the child . . . due to the closeness of the parent-child relationship." While the father's petition on appeal makes a passing reference to a claimed bond with the child, he makes no argument that the parent-child bond should preclude termination. So we do not consider his use of the term "bond" as an attempt to invoke a permissive exception to termination.

The court may grant a parent six additional months to work toward reunification in lieu of termination under certain circumstances. *See* Iowa Code § 232.117(5) (permitting the court to enter a permanency order pursuant to section 232.104 if it does not terminate parental rights); *see also id.* § 232.104(2)(b) (providing a permanency option of giving an additional six months to work toward reunification). Before the court may grant a parent additional time to work toward reunification, it must be able to "enumerate the specific factors, conditions, or expected behavioral changes which comprise the basis for the determination that the need for removal of the child from the child's home will no longer exist at the end of the additional six-month period." *Id.* § 232.104(2)(b). We turn to the record to assess the father's claim that he should be given an additional six months to work toward reunification.

The record reveals that the father refused to drug test when this case began in March 2023, though he did admit to marijuana use and ingesting an unknown drug the day before the child was born a few days earlier. He continued to refuse drug testing until January 2024 when he completed one drug test. That test was positive for cocaine. He entered an in-patient drug treatment program at the end of February and remained there at the time of the termination hearing in March. Yet, at the termination hearing, the father would not admit to using cocaine in January, when he had a positive sweat patch test, instead theorizing that the test was positive from being around others who used the drug.

Between August 2023 and the March 2024 termination hearing, the father only attended three in-person visits with the child. Once the father entered a treatment facility an hour-and-a-half away from the child, he requested the young

child be transported to him for visits, which would have required the child to spend three hours traveling round trip for visitation.[2]  When asked why he had not exercised more visitation with the child before entering treatment, the father responded that "it's not on me, it's on someone else."

Later, the father put the onus of caring for and protecting the child on the mother, opining that "they carried the child and they have a responsibility to, you know, make sure the child is protected" and lamenting, "I never had to do this stuff as a father" of his eight other children and "this ain't never anything I had to do." The father's limited understanding of parenting is apparent, despite the fact he has nine children.  He did not know if the child required naps or what daycare the child attends.  He also did not know the name of the child's doctor and blamed his lack of knowledge on the foster parents for not asking him if he wanted information about the child's doctor.

Based on this record, we agree with the juvenile court's conclusion that it "cannot find evidence to support a pathway to reunification within six months, given the history" of this case.  The father has been largely uninvolved in the child's life, has minimally participated in services aimed at fostering reunification, lacks a fundamental understanding of his parenting responsibilities, is only recently sober, and has not demonstrated an ability to maintain sobriety in an unstructured setting.

We understand the father claims he is now willing to actively parent and has taken the important step of seeking treatment for his substance use.  We commend the father for seeking treatment; it is an important step towards his self-

---

[2] The father also had one virtual visit with the child after he entered in-patient treatment.

improvement. But given the father's lack of engagement for the lion's share of this case, we question if the father's new attitude is likely to be sustainable. *See In re A.A.G.*, 708 N.W.2d 85, 93 (Iowa Ct. App. 2005); *In re A.D.*, No. 15-1508, 2016 WL 902953, at *2 (Iowa Ct. App. Mar. 9, 2016) ("Here, the mother did not act until after the eleventh hour. As the juvenile court determined, continued placement for six months was not appropriate because the record did not show the need for removal would have been resolved at the end of the extension."). This is particularly true given the father's sometimes uncooperative and combative attitude at the termination hearing and his concession that he is "kinda stubborn" about complying with the department's directives.

Because we conclude that the juvenile court correctly denied the father's request for additional time to work toward reunification, we affirm.

**AFFIRMED.**