# IN THE COURT OF APPEALS OF IOWA

———————————

No. 26-0195
Filed April 15, 2026

———————————

**In the Interest of T.A., T.A., T.A., and T.A., Minor Children,**

**P.L., Mother,**
Appellant.

———————————

Appeal from the Iowa District Court for Pottawattamie County,
The Honorable Matthew A. Schuling, Judge.

———————————

**AFFIRMED**

———————————

Mandy L. Whiddon of Whiddon Law, Omaha, Nebraska, attorney for
appellant mother.

Brenna Bird, Attorney General, and Mackenzie Moran, Assistant Attorney
General, attorneys for appellee State.

Abby Davison of Office of the State Public Defender, Council Bluffs,
attorney and guardian ad litem for minor children.

———————————

Considered without oral argument
by Ahlers, P.J., and Buller and Sandy, JJ.
Opinion by Buller, J.

1

**BULLER, Judge.**

The mother appeals the termination of her parental rights to four children who all share the initials T.A., with birthdates in 2013, 2015, 2017, and 2019. The father's rights were also terminated, but he does not appeal. We affirm, agreeing with the juvenile court that the mother made virtually no progress toward reunification over the life of these cases.

Given our resolution of the issues raised on appeal, we do not dwell too long on the underlying facts. The Iowa Department of Health and Human Services (HHS) became involved with this family in part because the mother used or possessed methamphetamine while caring for the children and provided one of the children with prescription drugs that were not prescribed to the child. The department offered services, but the mother's engagement was minimal at first and then stopped altogether about six months before the termination trial. There were at most a small handful of visits with the children after their removal, some of which were detrimental to the children. And the mother never completed required substance-abuse and mental-health evaluations or treatment. Nor did she show up for court-ordered drug testing.

In the juvenile court's words, the mother's trial testimony "was frenzied, off topic, and disjointed." The court found the mother "continue[d] to blame everyone but herself for the current juvenile court cases, including placing blame on the children." And the court expressed concern about the mother's sobriety and mental health, given "her testimony, speech patterns, and the history of this case."

The mother testified that she had been evicted from her home and was living in a hotel. She said she was unable to work or stand or sit for significant periods of time. And she admitted she continued to use unprescribed

controlled substances. She said she didn't complete the required substance-abuse or mental-health evaluations or treatments because she felt "like [her] rights have been violated," though she didn't really explain how. She said she believed the children were bonded to her. And when asked if the children could be returned to her care as of trial, she answered "[n]ot at this moment" and estimated she would be ready to parent within six months.

As of trial, one of the children was placed at a psychiatric medical institution for children (PMIC), and the other three were in foster care. An HHS worker observed the children were sad to not have their mother in their lives, but the worker questioned whether any parent–child bond remained intact. The children were all doing reasonably well in their placements, given the circumstances.

The county attorney and HHS supported termination of the mother's rights to all four children. The guardian ad litem recommended termination of the mother's parental rights to the younger three children and declined to recommend termination for the older child because he was in PMIC without a concrete plan for permanency. The juvenile court terminated the mother's rights to all four children under Iowa Code section 232.116(1)(b), (e), and (f) (2025), emphasizing her failure to assume any of the duties of parenting, her lack of progress toward any case goal, failure to comply with court-ordered services, failure to prioritize the children, and inability to safely care for them. The mother appeals, and we review de novo. *In re W.M.*, 957 N.W.2d 305, 312 (Iowa 2021).

The mother first challenges the statutory grounds for termination. But, when a juvenile court terminates a parent's rights on multiple grounds, we need only find one statutory ground supported by clear and convincing evidence to affirm. *In re A.B.*, 815 N.W.2d 764, 774 (Iowa 2012). We focus on

section 232.116(1)(f), and the only element the mother challenges on appeal is whether the child could be safely returned to her custody as of the hearing. *See In re A.S.*, 906 N.W.2d 467, 473 (Iowa 2018). But the mother admitted at trial she could not then safely resume custody of the children. This waives her claim on appeal. *See In re T.M.-L.*, No. 24-1818, 2025 WL 548851, at *3 (Iowa Ct. App. Feb. 19, 2025); *In re D.C.*, No. 24-1792, 2025 WL 401965, at *4 (Iowa Ct. App. Feb. 5, 2025); *In re J.S.*, No. 25-1012, 2025 WL 2658437, at *2 (Iowa Ct. App. Sep. 17, 2025). And even if it didn't, the record supports the juvenile court's conclusion given the mother's failure to progress with visits, her unresolved substance-abuse and mental-health issues, and her failure to engage with services.

The mother also appears to contest whether termination was in the children's best interests. The State asserts the mother's argument is so conclusory and underdeveloped we should not consider it, and we tend to agree. But, even if the issue was adequately raised, we agree with the juvenile court's ruling. In deciding best interests, we give primary weight "to the child[ren]'s safety, to the best placement for furthering the long-term nurturing and growth of the child[ren], and to the physical, mental, and emotional condition and needs of the child[ren]." Iowa Code § 232.116(2). For the three younger children, the record overwhelmingly demonstrates their safety, health, and stability is best served by termination. The older child faces more uncertainty given his PMIC placement and lack of permanency plan upon release. But we cannot say that it would be better for him to return to his mother's care than face that uncertainty. So we affirm the juvenile court's best-interests finding.

The mother last contests whether HHS made reasonable efforts to support reunification. But she did not request any specific additional services

below—to say nothing of the fact that she did not engage with any of the services that were offered. This claim was not preserved for our review. *See In re A.A.G.*, 708 N.W.2d 85, 91 (Iowa Ct. App. 2005) ("[HHS] has an obligation to make reasonable efforts toward reunification, but a parent has an equal obligation to demand other, different, or additional services prior to a permanency or termination hearing."). And even if the claim was preserved, it is meritless.

**AFFIRMED.**