# IN THE COURT OF APPEALS OF IOWA

No. 25-2200
Filed April 15, 2026

**In the Interest of N.L., Minor Child,**

**L.R., Mother,**
Appellant.

Appeal from the Iowa District Court for Linn County,
The Honorable Carrie K. Bryner, Judge.

**AFFIRMED**

David R. Fiester, Cedar Rapids, attorney for appellant mother.

Brenna Bird, Attorney General, and Tamara Knight, Assistant Attorney
General, attorneys for appellee State.

Julie Trachta of Linn County Advocate, Cedar Rapids, attorney and
guardian ad litem for minor child.

Considered without oral argument
by Tabor, C.J., and Badding and Langholz, JJ.
Opinion by Langholz, J.

1

**LANGHOLZ, Judge.**

A mother appeals the juvenile court's entry of a bridge modification order in her seven-year-old son's child-in-need-of-assistance ("CINA") case. That order closed this CINA case, returned jurisdiction to the district court, and modified a prior custody order by granting sole legal custody and physical care to the son's father. *See* Iowa Code § 232.103B (2024). The mother requests that we vacate the bridge modification order so the CINA case can remain open to allow her "additional time to achieve reunification."[1]

On our de novo review, we agree with the juvenile court that the CINA case could safely close by entering the bridge modification order. We also agree that it is in the son's best interest to grant the father sole legal custody and physical care with supervised visits from the mother. And on this record, we cannot find that the need for removal would no longer exist after a six-month extension of the CINA proceedings. *See id.* § 232.104(2)(b). We thus find that giving the mother more time would not be proper or in the son's best interest. So we affirm the juvenile court's entry of the bridge modification order.

## I.

These unmarried parents welcomed a son in 2018. They separated when the son was about three years old. And a previous CINA proceeding for the son ended in late 2022 with a bridge order granting the mother sole legal custody and placing the son in her physical care with alternating weekend visitation for the father.

---

[1] We avoid using the parties' names to respect their privacy because this opinion—unlike the juvenile court's order—is public. *Compare* Iowa Code §§ 232.103B(5), 232.147(2), *with id.* §§ 602.4301(2), 602.5110; *see also* Iowa Ct. R. 21.25.

The family came to the attention of the Iowa Department of Health and Human Services ("HHS") again in August 2024 due to concerns that the mother was using methamphetamine while caring for the son. During an unannounced home visit, the mother admitted to a social worker "that she had relapsed on methamphetamine approximately a month ago." Based on that information, the juvenile court granted HHS's application to remove the son from the mother's home and place him with the father.

The State filed a CINA petition, to which both parents stipulated. The juvenile court thus adjudicated the son as a child in need of assistance and continued his placement with the father after the temporary removal hearing in September 2024. The court also ordered the mother to participate in supervised visits with the son, cooperate with drug testing four times per month, and "continue to address her mental health and substance abuse issues as recommended by professionals." And it ordered the father to cooperate with drug testing twice per month.

The court entered its dispositional order in October 2024. The court continued the son's placement in the father's custody with the permanency goal to "return [the] child to home" with the mother. Around that time, the mother also started participating in family treatment court.

Over the next several months, the mother underwent a psychological evaluation, attended mental-health therapy and substance-use treatment, participated in regular supervised visits with the son, got a job, and had stable housing at a transitional-living facility in Cedar Rapids. Following the disposition review hearings in February and June 2025, the permanency goal remained "family reunification."

But after the August permanency hearing, the court entered an order changing the permanency goal to "maintain with father" based on the recommendations of HHS and the son's guardian ad litem. The court found that HHS had made reasonable efforts to reunify the family. The court also ordered the parties to participate in a staffing to discuss bridge orders and a long-term visitation arrangement.

Meanwhile, around October, the mother moved from Cedar Rapids to a small town in Wapello County about two hours away. And she started living with a former boyfriend with whom she resumed a relationship. The son was still living with the father and the father's girlfriend in Monticello, where he had been placed throughout the CINA proceedings.

The same month, the father moved for the juvenile court to close the CINA case by "transferring jurisdiction over the child's custody, physical care, and visitation to the district court through a bridge order." The court set the matter for hearing in December. At that hearing, the mother's counsel requested that the juvenile court "not close the case with entry of a bridge order, but instead allow the CINA to remain open" so the mother could "continue participating in services and proving to the court and herself . . . that she is an active, willing participant, and she can do a very good job with all of this."

Following the bridge order hearing, the court detailed its concerns about continuing the CINA proceedings and returning the son to the mother's custody:

> The mother has utilized services in this matter and has been actively involved with the child, however, she has not achieved meaningful progress. She abruptly moved to [Wapello County] recently which is several hours away from the child to be with her boyfriend. . . . She ended all services in Cedar Rapids and her impulsivity is concerning evidence

4

that she is either re-engaged in substance use or her mental health is not stable. The Court is also extremely concerned that the boyfriend appears to be controlling and the relationship is not healthy, therefore being unsafe for the child. The mother is currently on fully supervised visits and it is unsafe to the child to expand that visitation. Further, the mother and her boyfriend are purposely alienating the child from his father, harming him emotionally. . . . The child must be protected from controlling, volatile behavior and emotionally damaging situations. Further, the parents cannot communicate well and are not able to coparent in any type of constructive manner to the extent of having any type of shared custody or shared physical care.

And so, the juvenile court entered a bridge modification order, closing the CINA case, returning jurisdiction to the district court, and modifying the prior custody order by granting sole legal custody and physical care to the father. The court further ordered that the mother "shall have one fully supervised visitation with the [son] of two hours per week" in Monticello, along with two supervised phone calls with the son per week. The mother now appeals.

## II.

We review CINA proceedings de novo. *In re D.D.*, 955 N.W.2d 186, 192 (Iowa 2021). We give weight to the juvenile court's fact findings, especially regarding witness credibility, but we are not bound by them. *In re A.H.*, 950 N.W.2d 27, 33 (Iowa Ct. App. 2020). Our primary concern is the child's best interest. *Id.*

A bridge modification order closes a CINA case and returns jurisdiction over "issues of legal custody, physical care, and parenting time" to the district court. Iowa Code § 232.103B(1). Before the court can enter such an order, all these statutory conditions must be met:

> a. The child has been adjudicated a [CINA] in an active juvenile court case, and a permanency order is in place in that case.

b. Legal paternity has been established for the child.

c. The child is safely unified with a parent.

d. The district court has issued an order concerning custody, physical care, and parenting time regarding the child and the order is in place at the time of the filing of the [CINA] petition.

e. The juvenile court has determined that the [CINA] case can safely close when the modified district court order for custody, physical care, and parenting time is in place.

f. Either parent has qualified for a court-appointed attorney in the juvenile case.

*Id.* § 232.103B(1)(a)–(f).

The mother challenges the juvenile court's entry of the bridge modification order by highlighting her participation in recommended services until October 2025, when her lease at the transitional-living facility in Cedar Rapids ended. She also emphasizes that "she was able to meet [the son's] basic needs and consistently provided him love, attention and emotional support" during her visits with him. Thus, the mother contends: "Due to her continued progress and lack of any 'clear and present danger,' the court should have granted [her] additional time to achieve reunification, or at a minimum demonstrate her continued ability to remain a safe and sober caretaker so that supervised visits would not be warranted." The State responds that the juvenile court did not err in entering the bridge modification order because "additional time for the mother was not appropriate or in the child's best interests."[2]

_____

[2] As the State notes in its response to the mother's petition on appeal, the mother does not specifically challenge any of the statutory conditions for entry of the bridge modification order under Iowa Code section 232.103B(1). So we too limit our review. *See In re M.A.*, No. 25-0940, 2025 WL 2539023, at *2 (Iowa Ct. App. Sep. 4, 2025).

On our de novo review, we agree with the juvenile court that the CINA case could safely close by entering the bridge modification order. Here, "[t]he only impediment to closure of the CINA proceedings [was] the mother's instability. The negative impact of that instability was curbed by the terms of the bridge modification order giving the father legal custody and physical care of the child[]." *In re M.M.*, No. 24-1700, 2025 WL 273131, at *3 (Iowa Ct. App. Jan. 23, 2025).

The father has provided a safe and stable home for the son since his removal from the mother in August 2024. And the visitation terms of the bridge modification order allow the son to have a continued relationship with the mother while ensuring his safety. So we also agree that it is in the son's best interest to grant the father sole legal custody and physical care with supervised visits from the mother. *See In re M.A.*, No. 25-0940, 2025 WL 2539023, at *2–3 (Iowa Ct. App. Sep. 4, 2025).

Finally, we are unpersuaded by the mother's argument that she should have been given "additional time to achieve reunification." To continue placement for an additional six months after a permanency hearing, the juvenile court must "make a determination the need for removal will no longer exist at the end of the extension." *In re A.A.G.*, 708 N.W.2d 85, 92 (Iowa Ct. App. 2005); *see* Iowa Code § 232.104(2)(b). The juvenile court held the initial permanency hearing in August 2025—twelve months after the son's removal from the mother's home. After that hearing, the court changed the permanency goal to "maintain with father" based on the recommendations of HHS and the son's guardian ad litem. At the bridge order hearing in December 2025, the court noted that it "had actually left the case open a couple extra months thinking that we would be able to make more progress with" the mother, but she "made some decisions in the last couple

months that seriously impacted [her] ability to have quality time with [her] son." The court added that the mother had not provided information about her involvement in services since her recent, unannounced move away to Wapello County. And in the bridge modification order entered after that hearing, the court detailed its concerns about continuing the CINA proceedings and returning the son to the mother's custody.

On this record, we cannot find that the need for removal would no longer exist after a six-month extension. *See* Iowa Code § 232.104(2)(b). And because the son had already been out of the mother's home for over twelve months at the time of the bridge order hearing, "we view the proceedings with a sense of urgency." *See A.A.G.*, 708 N.W.2d at 93. Thus, we find that giving the mother "additional time to achieve reunification"—rather than closing the CINA case through the bridge modification order—would not be proper or in the son's best interest.

**AFFIRMED.**