**IN THE COURT OF APPEALS OF IOWA**

No. 25-0102
Filed March 19, 2025

**IN THE INTEREST OF M.P.,**
**Minor Child,**

**B.L., Mother,**
        Appellant.
_____

Appeal from the Iowa District Court for Clinton County, Kimberly K. Shepherd, Judge.

A mother appeals the juvenile court ruling terminating her parental rights, claiming she should have been given an extension of time to work toward reunification. **AFFIRMED**.

Gina L. Kramer of Kramer Law Office, PLLC, Dubuque, for appellant mother.

Brenna Bird, Attorney General, Dion D. Trowers, Assistant Attorney General, for appellee State.

Patricia Rolfstad, Davenport, attorney and guardian ad litem for minor child.

Considered by Greer, P.J., and Langholz and Sandy, JJ.

**SANDY, Judge.**

A mother appeals the juvenile court's ruling terminating her parental rights to her minor son. On appeal, the mother contends only that the juvenile court erred by denying her request for an extension of time to work toward reunification.

Upon our de novo review of the record, we affirm.

## I. Background Facts and Proceedings

B.L. is the mother of M.P., born in September 2023. M.P. came to the attention of the Iowa Department of Health and Human Services (HHS) after he tested positive for marijuana at birth. While pregnant with M.P., the mother admitted to frequently smoking cigarettes, consuming alcohol three to four times a week, and using marijuana daily. At the time of the child's birth, the mother lived in Clinton. The father lived in Ames.[1]

In December 2023, the mother and the child moved to Ames to live with the father. A few months after this move, the mother and father agreed to have M.P. temporarily removed from their custody after HHS received reports of a domestic altercation between them.[2] The mother and father agreed to have the child placed with the father's former foster mother, who lives in Clinton. Following the child's removal, the State filed a child-in-need-of-assistance (CINA) petition. M.P. was subsequently adjudicated in need of assistance and placed in the custody of HHS

---

[1] The parties never married.

[2] The record reveals the mother's relationship with the father has been marred with numerous incidents of domestic abuse. In October 2023, the mother was arrested and charged with domestic abuse assault, second offense. She was sentenced to two days in jail. A no-contact order was put in place between the mother and father but was lifted in December 2023.

for purposes of placement with a suitable other or fictive kin. The child remained placed with the father's former foster mother.[3]

Throughout this case, there have been concerns over the mother's substance use, mental health, history of domestic abuse, and housing instability. The mother has done little, if anything, to alleviate these concerns. In April 2024, the mother tested positive for methamphetamine and marijuana via a sweat patch. To her credit, the mother did obtain a substance use evaluation. During her evaluation, she admitted to frequent alcohol consumption, daily marijuana use "with an average of 4 blunts," and past methamphetamine use. The mother received a recommendation for extended outpatient counseling. However, she was unsuccessfully discharged from this treatment due to no-showing numerous appointments. Prior to her discharge, the mother's substance use counselor noted she "was using drugs regularly and was not committed to the therapeutic process."[4] During the summer of 2024, the mother admitted to HHS that she was regularly using methamphetamine.

Regarding her mental health, the mother self-reported to HHS that she had previous diagnoses for "ADHD, bipolar disorder with violent tendencies, anxiety, severe manic depression and PTSD." She also reported she had "been hospitalized when she was younger due to her mental health." The mother

---

[3] Of note, the child was removed from the father's former foster mother's custody after she was arrested for a drug-related offense. The child was then placed in the custody of C.R. and D.R.—the former foster mother's sister and brother-in-law. The child remains placed with C.R. and D.R., and HHS indicated during the termination hearing that this was a long-term placement option for the child. C.R. and D.R. live in Clinton.

[4] The record establishes the mother frequently failed to comply with drug testing requests made by HHS.

obtained a mental health evaluation, which recommended individual therapy and medication management. The mother attended one individual therapy session and then disengaged with mental health services.

The mother also did not participate in domestic abuse services to address concerns over her volatile relationship with the father. The father reported to HHS that the mother "has been abusive to him by throwing objects at him during arguments." The father also reported the mother frequently acted as a bully towards him. At one point, the mother and father were living at the Ames Homeless Shelter. However, the mother and father were eventually kicked out of the shelter due to their constant arguing. During one incident at the shelter, the mother locked herself and M.P. in a bathroom as the father attempted to break down the door. Due to numerous domestic disturbance calls involving the mother and father, the Ames Police Department assigned a special advocate to the couple.

Additionally, HHS repeatedly raised concerns about the mother's housing instability. Following her move to Ames to live with the father, the mother cycled in and out of homelessness. She and the father were evicted from numerous apartments and forced to live out of several hotels throughout this case. At one point, the mother and father were observed living in a public park.

Due to the mother and father's failure to participate in services and make progress, the State filed a petition to terminate their parental rights in September 2024. The juvenile court held a two-day termination hearing on December 5 and 18. At the hearing, the juvenile court heard testimony from the mother, father, and Sheryl Murphy—the HHS case manager assigned to the

family.  At the time of the first day of the termination hearing, the mother and father were both incarcerated at the Story County Jail.

The mother admitted in her testimony that she went to jail several times in the months leading up to the termination hearing.[5]  However, she testified that she obtained new substance use and mental health evaluations while in jail. Additionally, she testified she had been sober for nearly a month.  The mother also testified she was actively working with her attorney to secure her release from jail and placement into an "intensive inpatient" treatment facility.  The mother estimated she would be released from jail "[w]ithin the next month and a half's time."  During her testimony, she requested an extension of time to work toward reunification.

Murphy also testified at the termination hearing.  She testified that the mother and father hadn't visited or contacted M.P. since May 2024.  Murphy explained visits between M.P. and the mother and father were complicated by the fact that M.P. was placed in Clinton.  However, Murphy stated HHS repeatedly offered to provide the parents with transportation from Ames to Clinton, but those offers were rejected.  She added that neither parent had provided any financial support for the child during the case.  In her opinion, there was no bond between the parents and the child.  Murphy acknowledged the mother had obtained a

---

[5] The record reveals the mother was arrested for fifth degree criminal mischief and interference with official acts on September 18, 2024.  The mother was arrested for possession of drug paraphernalia and interference with official acts on November 4.  The mother was then arrested for second degree theft, possession of drug paraphernalia, and interference with official acts on November 24.

substance use evaluation while in jail but testified that neither parent had otherwise participated in services.

The juvenile court subsequently issued its ruling terminating the mother and father's parental rights. Both parents' parental rights were terminated pursuant to Iowa Code section 232.116(1)(b), (d), (e), and (h) (2024).[6] The mother now appeals.

## II. Standard of Review

"We review termination of parental rights de novo." *In re J.E.*, 723 N.W.2d 793, 798 (Iowa 2006). "We are not bound by the juvenile court's findings of fact, but we do give them weight, especially in assessing the credibility of witnesses." *In re C.Z.*, 956 N.W.2d 113, 120 (Iowa 2021) (citation omitted).

## III. Analysis

We utilize a three-step analysis to review the termination of parental rights. *In re A.S.*, 906 N.W.2d 467, 472 (Iowa 2018). "The first step is to determine whether any ground for termination under section 232.116(1) has been established." *In re M.W.*, 876 N.W.2d 212, 219 (Iowa 2016). If a statutory ground for termination has been established by clear and convincing evidence, "then we determine whether the best-interest framework as laid out in section 232.116(2) supports the termination of parental rights." *Id.* at 219–20. Lastly, if we determine the best-interest framework supports termination of parental rights, "we consider whether any exceptions in section 232.116(3) apply to preclude termination." *Id.* at 220. "However, if a parent does not challenge a step in our analysis, we need

---

[6] The father does not appeal termination of his parental rights.

not address it." *In re J.P.*, No. 19-1633, 2020 WL 110425, at *1 (Iowa Ct. App. Jan. 9, 2020).

   *1. Extension of Time*

   On appeal, the mother challenges only the juvenile court's denial of her request for an extension of time to work toward reunification. She believes the juvenile court erred in denying her request for an extension because she "showed new motivation and engagement due to her incarceration." She points out that "M.P. is just over one year old and placed with fictive kin." She contends affording her a "brief extension of time would allow her [to] prove her commitment to sobriety and ability to parent M.P." We disagree.

   The juvenile court may grant an extension of time for a parent to work toward reunification if the court determines "that the need for removal of the child from the child's home will no longer exist at the end of the additional six-month period." *In re A.A.G.*, 708 N.W.2d 85, 92 (Iowa Ct. App. 2005) (quoting Iowa Code § 232.104(2)(b)). In order to grant an extension, the juvenile court must "enumerate the specific factors, conditions, or expected behavioral changes which comprise the basis" for its determination that the need for removal will no longer exist after the additional period of time. Iowa Code § 232.104(2)(b). "The judge considering the extension should however constantly bear in mind that, if the plan fails, all extended time must be subtracted from an already shortened life for the child[] in a better home." *In re J.L.*, No. 22-1959, 2023 WL 2395737, at *4 (Iowa Ct. App. Mar. 8, 2023) (cleaned up).

   In determining that an extension of time was not warranted, the juvenile court stated:

> The Court has considered the request for [an] extension of time for permanency. The request for an extension of time is denied. Based on the behavior of the parents over the past year, the fact that the parents have not engaged in services, the fact that the parents do not have employment or a stable residence, and the fact that the parents have not seen [M.P.] since May of 2024, the Court cannot conclude that circumstances will be any different in three to six months.

We agree with the juvenile court's assessment. The mother testified at the termination hearing that she had been sober—notably, while in jail—for a month. According to her testimony, the mother also obtained a new substance use evaluation while she was in jail. Though these are important steps to achieving sobriety, they came far too late to give us confidence the need for removal will not exist after an additional six months. *See In re D.D.*, No. 19-1053, 2019 WL 4678226, at *2 (Iowa Ct. App. Sep. 25, 2019) (concluding an extension of time was not warranted where the mother "waited until after the petition for termination of parental rights was filed to continue with a substance-[use] treatment program for more than a few weeks"). Further, as noted in numerous HHS reports submitted to the juvenile court, the mother has repeatedly verbalized a willingness to participate in services. Yet she has time and time again failed to follow through. This bolsters our conclusion that an extension of time is not warranted. *See In re A.G.*, No. 21-0037, 2021 WL 3074505, at *3 (Iowa Ct. App. July 21, 2021) ("Based on the mother's conduct thus far, it is unlikely she would be able to resume care of the child after six months.").

Additionally, while the mother has taken minimal steps to address her substance use issues, this was not the only concern in this case. There were well-documented concerns with the mother's mental health, history of domestic abuse,

and housing instability.  The mother has done little, if anything, to address these concerns.  *See In re M.S.*, No. 23-0036, 2023 WL 2674100, at *4 (Iowa Ct. App. Mar. 29, 2023) (determining an extension of time was not warranted where "[t]he mother ha[d] not fully addressed the problems that led to the removal of the child during the CINA proceedings").

Accordingly, we find the juvenile court did not err in denying the mother's request for an extension of time.

## IV.  Conclusion

We affirm the juvenile court's ruling terminating the mother's parental rights.

**AFFIRMED.**