# IN THE COURT OF APPEALS OF IOWA

———————————————

No. 25-2178
Filed April 15, 2026

———————————————

**In the Interest of K.M.-H., A.M. and Z.M., Minor Children,**

**H.H., Mother,**
Appellant.

———————————————

Appeal from the Iowa District Court for Polk County,
The Honorable Erik I. Howe, Judge.

———————————————

**AFFIRMED**

———————————————

Felicia Bertin Rocha of Bertin Rocha Law PC, Urbandale, attorney for
appellant mother.

Brenna Bird, Attorney General, and Natalie Hedberg, Assistant Attorney
General, attorneys for appellee State.

Shannon Lee Wallace of Youth Law Center, Des Moines, attorney and
guardian ad litem for minor children.

———————————————

Considered without oral argument
by Tabor, C.J., and Ahlers and Langholz, JJ.
Opinion by Tabor, C.J.

**TABOR, Chief Judge.**

"I think it really just speaks to the depths of her addiction and how much control it has over her that her love of her kids and her want to do the right things by them just cannot overcome the hold that her addiction has on her right now." This sentiment, expressed by counsel for the State at the termination-of-parental-rights hearing, captures our chief concern in evaluating this mother's appeal.

The mother, Holly, challenges the termination of her legal relationship with three sons. She alleges that the State did not prove grounds for termination. She also alleges that her "exceptional bond" with the children should preclude termination and a better option would be deferring permanency for six months while she pursues treatment for her substance use and mental health. Unpersuaded by those arguments, we affirm the juvenile court's termination order.[1]

## I.      Facts and Prior Proceedings

Holly has three boys: K.M.-H. (born in 2013), A.M. (born in 2017), and Z.M. (born in 2019). David is the putative father of K.M.-H. Andrew is the father of the two younger boys.[2] At the time of the termination hearing in October 2025, Holly was pregnant with a baby girl due in November.

---

[1] "We review termination of parental rights de novo. We are not bound by the factual findings of the juvenile court, though we give them respectful consideration, particularly with respect to credibility determinations." *In re W.M.*, 957 N.W.2d 305, 312 (Iowa 2021) (internal citation omitted).

[2] The juvenile court also terminated David's parental rights, but he does not appeal. Andrew's parental rights were not at issue.

This family came to the attention of the Iowa Department of Health and Human Services for a founded child-abuse report in March 2024. An investigation revealed that K.M.-H. was physically abused by Andrew, who was then living with Holly and the three children. Holly also reported being assaulted by Andrew. When Andrew moved out, Holly started a relationship with a new paramour, Jesse, who was also abusive.[3] All three boys saw Jesse's domestic violence against Holly. And despite having access to a domestic-abuse advocate, Holly did little to address her need to avoid unsafe individuals, according to the department.

There were also concerns about substance use. After nearly a decade of sobriety, Holly relapsed using methamphetamine. When removed from parental care that August, the boys tested positive for amphetamine and methamphetamine. K.M.-H. also tested positive for THC, the active ingredient in marijuana.

In October, the juvenile court adjudicated the boys as children in need of assistance (CINA). The department offered services to help Holly reunite her with her children, but she did not make meaningful progress toward that goal. The two looming concerns remained her substance use and mental health.

On the first concern, Holly continued to use methamphetamine during the year her children were removed, even after discovering she was pregnant. She often tested positive for methamphetamine or refused to test. She completed two substance-use evaluations; both recommended inpatient treatment. In early October 2025, she started inpatient treatment but stopped

_____

[3] After the court got involved with this case, Holly revealed that she married Jesse. And despite her reports that she "kicked him out of the house," the department received information that they were still living together.

after a day. And when a spot opened the week before the termination hearing, she declined to go, even though the State was willing to delay the hearing. At the hearing, Holly explained her aversion to inpatient treatment: "[I]t's the new atmosphere that scares me. Between my anxiety and my depression, like, being separated from what's familiar to me puts me in a panic."

On the second concern, despite her anxiety and depression being barriers to obtaining needed inpatient substance-use treatment, Holly did little to address her mental health. She testified at the termination hearing that she tried finding a therapist. But in the year since the children were adjudicated CINA, she had not done so. She acknowledged not engaging in any mental-health treatment during this case.

Meanwhile, the children faced instability in their placements during the CINA case.[4] At first, they lived with a relative. Then A.M. and Z.M. moved to foster care, with K.M.-H. joining them later. But due to behavioral concerns, K.M.-H. moved to a new home in July 2025. By the termination hearing, K.M.-H. was in a fourth placement. The boys had weekly visits with their mother, but K.M.-H. often chose not to attend.

After a hearing, the juvenile court terminated Holly's parental rights under Iowa Code section 232.116(1), paragraphs (f) and (*l*) (2025). She appeals.

## II.    Analysis

We review termination cases in three steps. *In re D.W.*, 791 N.W.2d 703, 706 (Iowa 2010). First, the State must prove a statutory ground under Iowa Code section 232.116(1). *Id.* Second, the State must show termination

---

[4] The two older children have special needs and have attended therapy for various psychiatric diagnoses.

is in the children's best interests under section 232.116(2). *Id.* at 707. Third, parents may rely on exceptions to termination under section 232.116(3). *Id.* We address steps that a parent disputes. *See In re P.L.*, 778 N.W.2d 33, 40 (Iowa 2010).

On appeal, Holly challenges the first and third steps of this framework. Her best-interests challenge is more accurately a reprise of her request for a six-month extension for reunification efforts. We address each claim in turn.

## A. Grounds for Termination

Holly contests both grounds for termination cited by the juvenile court, claiming the State failed to meet its burden of proof.[5] "On appeal, we may affirm the juvenile court's termination order on any ground that we find supported by clear and convincing evidence." *D.W.*, 791 N.W.2d at 707. Here, we focus on paragraph (f). That section permits termination if the court finds:

> (1) The child is four years of age or older.

> (2) The child has been adjudicated a child in need of assistance pursuant to section 232.96.

> (3) The child has been removed from the physical custody of the child's parents for at least twelve of the last eighteen months, or for the last twelve consecutive months and any trial period at home has been less than thirty days.

> (4) There is clear and convincing evidence that at the present time the child cannot be returned to the custody of the child's parents as provided in section 232.102.

---

[5] The State argues this issue is unpreserved because Holly's counsel did not offer "a sufficiently detailed argument" in her petition on appeal. Without deciding whether she waived this point, we opt to reach the merits.

Iowa Code § 232.116(1)(f).

The first three elements are not in dispute, so we analyze only the fourth element. We ask whether the children could safely be returned to Holly's custody at the time of the termination hearing. *See In re J.E.*, 723 N.W.2d 793, 799 (Iowa 2006) (interpreting "returned to the custody" as whether the child could safely return to the parent's care); *In re A.S.*, 906 N.W.2d 467, 474 (Iowa 2018) (interpreting "at the present time" to mean the point of the termination hearing).

At the termination hearing, Holly reported she was one-month sober. Taking that as true, one month of sobriety does not demonstrate a safe home environment. *See, e.g.*, *In re N.F.*, No. 24-1586, 2024 WL 5153389, at *4 (Iowa Ct. App. Dec. 18, 2024) ("[A] parent's short period of sobriety prior to a termination trial is not sufficient to demonstrate that the children are able to safely return to their care."). And Holly has not engaged in the extensive substance-use treatment she needs, leading us to believe her addiction remains unresolved. "[A] parent's use of methamphetamine in itself creates a danger for children." *In re C.M.*, No. 25-0435, 2025 WL 1706340, at *2 (Iowa Ct. App. June 18, 2025).

Beyond her methamphetamine use, she has not addressed her mental health, which hindered her ability to participate in inpatient substance-use treatment. And as the juvenile court noted, Holly "made no measurable progress" in addressing domestic violence concerns. Considering these safety concerns, we find clear and convincing evidence that the children could not be returned to Holly's custody at the time of the termination hearing. The State proved the ground for termination under paragraph (f).

## B. Exceptions to Termination

Next, Holly contends that section 232.116(3)(c) applies to preclude termination. Holly highlights her many years as a stay-at-home mom for her three children. According to Holly, termination would be harmful to her sons because of the bond they share with her. *See* Iowa Code § 232.116(3)(c); *In re A.B.*, 956 N.W.2d 162, 169 (Iowa 2021) (placing burden on parent to prove by clear and convincing evidence that "termination would be detrimental to the child at the time due to the closeness of the parent-child relationship" (citation omitted)).

Exceptions to termination "are permissive, not mandatory." *A.S.*, 906 N.W.2d at 475 (citation omitted). True, Holly cared for her children as a stay-at-home mom, creating a close connection with them.[6] But "the existence of a bond is not enough" for a parent to benefit from this exception. *A.B.*, 956 N.W.2d at 169. Holly cannot provide for the children's needs given her continued struggles with mental health, substance use, and exposure of the children to unsafe adults. Thus, any harm to the children from termination of Holly's parental rights does not outweigh the risks of returning them to her custody. *See D.W.*, 791 N.W.2d at 709 ("[O]ur consideration must center on whether the child will be disadvantaged by termination, and whether the disadvantage overcomes [the parent's] inability to provide for [the child's] developing needs."). It is Holly's burden to prove this exception, and she did not do so.

## C. More Time for Reunification

Lastly, we consider whether Holly should have been given more time to reunite with her children. *See* Iowa Code § 232.117(5) (permitting court to

---

[6] That bond may be fraying with K.M.-H., who often declines visits with Holly.

deny termination and enter a permanency order under section 232.104). She contends that rather than terminate her rights, she should have been granted a six-month extension to participate in services. *See id.* § 232.104(2)(b). She contends the juvenile court should have given more weight to "her superlative past history of parenting."

To continue placement for six months, section 232.104(2)(b) requires the court to decide "the need for removal will no longer exist at the end of the extension." *In re A.A.G.*, 708 N.W.2d 85, 92 (Iowa Ct. App. 2005). We must also consider whether waiting longer for permanency is in the children's best interests. *In re W.T.*, 967 N.W.2d 315, 323 (Iowa 2021). In determining best interests, we give primary consideration to the children's safety, to the best placement for furthering their long-term nurturing and growth, and to their physical, mental, and emotional condition and needs. Iowa Code § 232.116(2).

We have no doubt that Holly loves her children. She spoke at length about each of her sons at the termination hearing. But her lack of engagement with the services offered persuades us that six more months will not resolve the need for removal. Holly has not found a therapist to deal with her mental-health conditions, nor has she completed substance-use treatment. And delaying permanency is not in her children's best interests. *See In re C.K.*, 558 N.W.2d 170, 175 (Iowa 1997) ("Children simply cannot wait for responsible parenting." (citation omitted)). Her three sons need safety, stability, and predictability now, and that is best achieved by terminating Holly's rights.

**AFFIRMED.**